STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ROBERT J. SCHUMANN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 12, 1987—Decided July 1, 1987.

502

Before Judges SKILLMAN and LANDAU.

*Jeffrey B. Steinfeld,* Assistant Deputy Public Defender, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney; *Jeffrey B. Steinfeld,* of counsel and on the brief).

*Linda K. Calloway,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *Linda K. Calloway,* of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.S.C. (temporarily assigned).

Tried to a jury defendant Robert J. Schumann was convicted of aggravated sexual assault contrary to *N.J.S.A.* 2C:14–2a(1) (count one); sexual assault contrary to *N.J.S.A.* 2C:14–2b (count two); and endangering the welfare of a child contrary to *N.J.S.A.* 2C:24–4b(4) and *N.J.S.A.* 2C:24–4a (counts three and four). All convictions stem from Schumann's sexual conduct with D.H., an 11 year old Pennsylvania boy on June 14, 1984 during a trip to Sandy Hook. Schumann was sentenced to an aggregate term of 22 years with an 11 year parole ineligibility period.

On appeal, Schumann raises the following issues:

POINT I

THE SUPERIOR COURT OF NEW JERSEY WAS WITHOUT JURISDICTION TO TRY COUNT THREE, ENDANGERING THE WELFARE OF A CHILD, BECAUSE THE CRIME OCCURRED IN AN AREA WHERE FEDERAL COURT JURISDICTION IS EXCLUSIVE. TRYING THE CASE IN THE ABSENCE OF JURISDICTION VIOLATED DEFENDANT'S DUE PROCESS RIGHTS.

POINT II

THE TRIAL COURT VIOLATED THE CLEAR MANDATE OF *EVIDENCE RULE* 55 BY ALLOWING THE VICTIM TO TESTIFY TO STATEMENTS MADE BY THE DEFENDANT CONCERNING PRIOR SEXUAL MISCONDUCT.

POINT III
> PREJUDICE AND IMPROPER REMARKS MADE BY THE PROSECUTOR DURING HIS SUMMATION DEPRIVED THE DEFENDANT OF A FAIR TRIAL AND *INTER ALIA*, CONSTITUTED A VIOLATION OF HIS FIFTH AMENDMENT RIGHT NOT TO TESTIFY. (Partially Raised Below)

POINT IV
> THE TRIAL COURT'S VERDICT ON COUNT THREE OF THE INDICTMENT IS BASED UPON INSUFFICIENT EVIDENCE WHICH DOES NOT CONSTITUTE PROOF BEYOND A REASONABLE DOUBT.

POINT V
> THE TRIAL JUDGE ERRED IN REFUSING DEFENSE COUNSEL'S REQUEST FOR AN ADDITIONAL PRESENTENCE REPORT: HIS RELIANCE UPON THAT REPORT CAUSED HIM TO IMPOSE A SENTENCE WHICH REPRESENTS AN ABUSE OF DISCRETION.

On June 14, 1984, Paul Zimmer, a long-time family friend, arrived at D.H.'s home in Bryn Mawr, Pennsylvania, to pick up the youth for a previously arranged camping trip. Zimmer was accompanied by Schumann, who drove. The car was Schumann's own taxicab.

According to D.H., after they left the house, Schumann and he were seated in the front seat, while Zimmer was seated in the back. Schumann headed north and drove into New Jersey. At some point after the car entered New Jersey, Schumann asked D.H. to unzip his pants. He then began to masturbate D.H. until he became erect. D.H. also recalled that Schumann himself masturbated until he reached orgasm.

Schumann drove to Sandy Hook and the three went to the beach. Both Zimmer and Schumann requested that D.H. remove his clothes. After noting that others on the beach were nude, he complied.[1]

Zimmer and Schumann led D.H. behind a bush, and Schumann again masturbated D.H. to erection. Schumann then took two pictures of D.H. D.H. remembered the number of pictures taken because he "saw two flashes." The photographs were not produced at trial.

---

[1]The three visited a beach which is part of the federally owned and maintained Gateway National Recreation area where public nudity is allowed.

Thereafter, the two adults and D.H. returned to the car and headed for Schumann's home in Clarksburg. Schumann was driving, Zimmer was in the back seat and D.H. was in front. According to D.H., Schumann stopped on a dirt road, turned off the ignition and again commenced sexual activity with him. This time, D.H. said, Schumann masturbated him and performed fellatio until the boy ejaculated. The three then continued the journey to Schumann's home, which was five or ten minutes away.

Defense counsel's *in limine* motion having been denied, D.H. testified that on this day Schumann told D.H. not to disclose the sexual activity to anyone because Schumann could "get into trouble," and that he had been sent to jail because he had engaged in similar activity with another boy who confided in his parents.

At Schumann's home, where they stayed for 15 minutes, D.H. met Schumann's parents and then left with Zimmer in Zimmer's automobile. D.H. saw his parents for the first time subsequent to the June 14 sexual activities when they picked him up that next Monday, June 18, 1984, at a child abuse center. D.H.'s mother testified without objection that during the ride home her son "indicated that he had been asked to have oral sex with Robert Schumann."

Paul Zimmer pled guilty to charges brought in Pennsylvania after he entered into an agreement whereby D.H.'s family would receive a restitutionary award of $10,000 to pay for psychological therapy for D.H. In December 1984, the Monmouth County Prosecutor's Office became involved, and Schumann was arrested on February 22, 1985. At Schumann's trial, John Cernak, an investigator in the Monmouth County Prosecutor's Office, testified as a defense witness. According to the investigator, Schumann was advised of his constitutional rights on February 22, 1985 and signed a waiver. Schumann told Cernak that on June 14, 1984, he had supplied transportation to Paul Zimmer and D.H. from Pennsylvania to Sandy Hook and

then to Clarksburg. Cernak testified that, according to Schumann, Zimmer sat in the back seat with D.H. When the investigator asked Schumann about the alleged sexual activities, Schumann stated that he wanted an attorney and questioning was discontinued.

Schumann was subsequently convicted on all counts and this appeal followed.

Jurisdiction over count three of the indictment was placed squarely in issue when Schumann moved pre-trial for dismissal thereof. See *R.* 3:10-2 and *R.* 3:10-4. While this motion was correctly denied we hold that the trial judge erred in denying Schumann's subsequent motion for acquittal on this count under *R.* 3:18-1.

■ Count three charged Schumann with violation of *N.J. S.A.* 2C:24-4b(4) in that "in diverse locations" in Monmouth County he photographed D.H., age 11, in a prohibited sexual act or in simulation of such an act. The trial judge properly exercised his discretion in denying Schumann's motion to dismiss count three of the indictment. The count is not "palpably defective" because it alleges all essential facts of the crime and sufficiently states the charge. *State v. New Jersey Trade Waste Ass'n,* 96 *N.J.* 8, 18-19 (1984). There is, however, a marked difference between a motion which tests whether the necessary elements of an offense have been set forth in the indictment and the burden of the State at trial to prove those elements beyond a reasonable doubt.

Schumann says that the New Jersey Superior Court was without jurisdiction to try him under count three of the indictment because the proof as to the offense charged therein places the activity on Sandy Hook. He says that in 1846 "exclusive" jurisdiction over all of Sandy Hook was ceded to the federal government.

Although it has not been addressed as such, jurisdiction, when placed in issue, is "an element of an offense" which must be proved beyond a reasonable doubt. Consistent with constitutional mandate, *N.J.S.A.* 2C:1-13(a) provides:

No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. In the absence of such proof, the innocence of the defendant is assumed.

Under *N.J.S.A.* 2C:1-4:

h. 'Element of an offense' means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as....

(e) Establishes jurisdiction or venue; ....

"[T]he 'jurisdiction' referred to in the criminal code definition of the elements of an offense is territorial jurisdiction, defined in *N.J.S.A.* 2C:1-3." *State in Interest of G.W.*, 206 *N.J.Super.* 50, 55 (App.Div.1985).

■ The only evidence offered by the State on the issue of jurisdiction was D.H.'s testimony that he was taken "behind a bush" at or near a nude beach on Sandy Hook. Our independent research reveals that most of the area of Sandy Hook is under concurrent state-federal jurisdiction.[2] Consequently, it is probable that the offense was committed in such an area. While sufficient to sustain the denial of the pre-trial motion,

---

[2] By *L.* 1846 *p.* 124, the State Legislature ceded to the United States jurisdiction in a designated "portion" of Sandy Hook owned by the federal government for military and public purposes. The legislation expressly provided that such cession shall not "prevent the operation of public laws of this State within the bounds of said tract ..." Thus, the State apparently retained concurrent jurisdiction in this tract. *See, Bowen v. Johnston*, 306 *U.S.* 19, 59 *S.Ct.* 442, 83 *L.Ed.* 455 (1930) (language of cession controlling as to jurisdiction).

In 1963 Cyrus Vance, then Secretary of the Army, sent a letter to Governor Hughes with respect to 460 acres of Sandy Hook property leased by the federal government to the State, described as being located "within Fort Hancock Military Reservation, New Jersey." An attachment to the letter described, in metes and bounds, the land to which the letter referred. The army secretary offered to "retrocede" to the State concurrent legislative jurisdiction over the area which, according to the secretary, "the United States has previously acquired exclusive jurisdiction ceded to it by the State." The source of that acquired "exclusive jurisdiction" is not mentioned in the letter. Nonetheless, on November 6, 1963, Governor Hughes accepted the retrocession of concurrent jurisdiction.

In 1976 Howard Callaway, then Secretary of the Army, made another offer to extend to the State concurrent jurisdiction "over the area of Fort Hancock to be transferred from the Department of the Army to the Department of the Interior as authorized by Public Law 92-595, (16 *U.S.C.S.* § 460cc) which

this falls considerably short of establishing the element of jurisdiction beyond a reasonable doubt before the jury, particularly inasmuch as they received neither evidence nor a charge on the issue. *Cf. State v. Brown*, 80 *N.J.* 587, 591–592 (1979).

Accordingly, the conviction under count three must be reversed and remanded for entry of a judgment of acquittal.

■ The trial judge denied Schumann's *in limine* motion to exclude, under *Evid.R.* 4, D.H.'s testimony as to Schumann's prior combined warning and admission of a similar conviction, presumably on the ground that it tended to explain the absence of a "fresh complaint." This rule is applied widely in rape and morals cases and permits proof that the violated victim complained within a reasonable time to someone who would ordinarily be turned to for sympathy, protection and advice. Among other reasons, it is offered as an explanation of a

established the Gateway National Recreation area." An attachment defined by metes and bounds the property to which the secretary referred and contained an exception of five parcels of land under the jurisdiction of the United States Coast Guard. The description indicates that 1116.73 acres of land were covered by the retrocession of concurrent jurisdiction. We cannot now determine if the metes and bounds description in the 1963 and 1976 retrocessions include all of Sandy Hook, but this appears unlikely in view of the five Coast Guard parcels mentioned.

In 1977 the Legislature gave "all legal and equitable title of the State of New Jersey to lands ... lying within the boundaries of the Sandy Hook Unit" of Gateway National Recreation area to the United States, "to be held and administered by the Secretary of the Interior pursuant to the Gateway National Recreation Act, subject to such easements therein as may now lawfully exist." (*L.*1977, *c.* 294) 16 *U.S.C.S.* § 460cc defines the "Sandy Hook Unit" as the entire area between Highway 36 bridge and the northern most point of the peninsula. Although the 1977 legislation is silent as to jurisdiction over this area, 40 *U.S.C.A.* § 255 provides that as to property acquired by the United States after 1940 exclusive jurisdiction is not obtained unless formally accepted. *See e.g., Adams v. United States*, 319 *U.S.* 312, 63 *S.Ct.* 1122, 87 *L.Ed.* 1421 (1943).

Thus, it would seem that the State probably has at least concurrent jurisdiction over most of Sandy Hook, but jurisdiction over any given area cannot be assumed. It must be established to the satisfaction of the jury, when appropriately placed in issue, beyond a reasonable doubt.

"self-contradiction" which would result from the absence of a complaint. *State v. Balles*, 47 *N.J.* 331, 338 (1966), *cert.* den. 388 *U.S.* 461, 87 *S.Ct.* 2120, 18 *L.Ed.*2d 1321 (1967). The record reflects that the jury received evidence that D.H. made a "fresh complaint" to his mother so that it was unnecessary to rebut the absence of "fresh complaint" by use of the Schumann warning-admission. Accordingly, the evidence of prior similar crime, not offered for any of the reasons enumerated or contemplated under *Evid.R.* 55, should have been excluded under *Evid.R.* 55 and *Evid.R.* 4.

> We have long recognized that the restrictions upon the admissibility of other-crimes evidence to prove predisposition stem not so much from a lack of probative worth as from the potential for unfair prejudice. The danger exists that a jury, aware of other-crimes evidence, may convict a defendant not on the evidence of the specific crime at issue but because of the perception that the defendant is a 'bad' person in general.
>
> [*State v. Gibbons*, 105 *N.J.* 67, 77 (1987)] (Citations omitted)

The question of whether this was harmless error must be considered together with other trial error.

During summation, the prosecutor referred to Schumann's silence after being furnished with his rights, including the right to remain silent saying, "... whenever [investigator] Cernak gets to—how about these sexual incidents, whoa, I want an attorney ... as soon as he's asked about sexual incidents, I want an attorney. Now, there is nothing wrong with that. He's got that right. But ask the question. Did he ever deny it?" There was neither an objection, nor a curative comment or charge by the trial judge. The comment by the prosecutor was improper. Even though he told the jury that defendant had a right to an attorney and there was nothing wrong in requesting one, the prosecutor plainly intended to focus the attention of the jury upon defendant's silence, after having been instructed that he had a right to remain silent. In this case, defendant elected not to take the stand. Thus, unlike *Doyle v. Ohio*, 426 *U.S.* 610, 96 *S.Ct.* 2240, 49 *L.Ed.*2d 91 (1976); *State v. Lyle*, 73 *N.J.* 403 (1977); *State v. Deatore*, 70 *N.J.* 100 (1976), and *State v. Merola*, 214 *N.J.Super.* 108 (App. Div.1986), we are not faced with the question of use of prior

silence in cross-examination of the defendant. Nonetheless, we think it clear from the holdings in these cases that, if anything, the prosecutor's comments on summation should receive an even less favorable reception from a New Jersey court where a defendant has not taken the stand. *Cf. Griffin v. California*, 380 *U.S.* 609, 85 *S.Ct.* 1229, 14 *L.Ed.*2d 106 (1965), reh. denied 381 *U.S.* 957, 85 *S.Ct.* 1797, 14 *L.Ed.*2d 730 (1965).

■ In many cases, the weight of the State's evidence might be such as to render either or both of these errors relatively harmless. Here, however, where the entire case rested on the credibility of a single youthful witness, we believe that there was a clear capacity to bring about an unjust result by substantially enhancing the victim's credibility through an improper focus on the defendant's post-warning silence and prior similar conviction. *R.* 2:10–2.

Accordingly, the convictions on counts one, two and four are reversed and remanded for new trial. Our ruling makes it unnecessary for us to consider the other allegations of error.

Reversed as to count three. Reversed and remanded as to counts one, two and four. We do not retain jurisdiction.