713 A.2d 401

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. THOMAS
G. ZEIDELL, DEFENDANT–RESPONDENT.

Argued February 17, 1998—Decided June 4, 1998.

418

*Mark P. Stalford,* Assistant Prosecutor, argued the cause for appellant (*John A. Kaye,* Monmouth County Prosecutor, attorney).

*Steven M. Gilson,* Designated Counsel, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

*John F. O'Hern,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

*Thomas G. Zeidell,* submitted letters in lieu of brief, *pro se.*

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this appeal is whether a defendant who has criminal sexual contact with himself that is observed by two children of eight and ten years from a distance of approximately seventy-five feet has committed second-degree sexual assault. In a reported opinion, a divided panel of the Appellate Division reversed two convictions for sexual assault. The majority concluded that because no specific victimization and aggressive assaultive conduct had been established, the necessary relational component for sexual assault had not been proven. *State v. Zeidell,* 299 *N.J.Super.* 613, 619–20, 691 *A.*2d 866 (1997). The dissenting judge believed that no specific victimization was required and that all of the statutory elements of sexual assault had been established. *Id.* at 624–27, 691 *A.*2d 866.

The State appeals as of right because of the dissent below. *R.* 2:2–1(a)(2). We reverse and hold that the specific intent to victimize an observer is not an element of sexual assault involving a child who is less than thirteen years old (referred to as a tender-years-sexual assault).

I

-A-

Defendant was convicted of the following offenses: two counts of second-degree sexual assault upon K.B. and E.B., who were ten and eight years old, respectively; two counts of endangering the welfare of those two children; and two counts of fourth-degree lewdness based on exposing his intimate parts to the same children. After merging the endangerment and lewdness counts with the sexual assaults upon each child, the court sentenced defendant to concurrent ten year terms with five years of parole ineligibility to the Adult Diagnostic and Treatment Center.

-B-

The evidence presented by the State that tended to establish the elements of the charged offenses consisted of what follows. On June 18, 1994, Carol S., an adult, took her friend's two young children, K.B. and E.B., and their two cousins, J.F. and C.F., to a beach area located on the border of Asbury Park and Ocean Grove. The beach area was approximately fifty yards wide and was situated between buildings located to the north and south. To the west, there was a boardwalk that extended in a northerly direction.

Although the beach was crowded earlier in the day, at the time of the alleged criminal conduct only Carol and the children were present. After the four children had been playing in the water for awhile, K.B. and E.B. exited the water to talk and play with Carol, who was sitting on a towel near the center of the beach. J.F. and C.F. remained in the water. Carol faced the water and K.B. sat facing her as they spoke. E.B. sat to Carol's right side and stared out at the water.

Shortly after 8:00 p.m. while patrolling the beach areas, Officer Frederick Jenkins observed an adult female with two young children playing in the middle of the beach; two other children were swimming in the water. Officer Jenkins also observed defendant and a couple at the beach area. Defendant was standing at the end of the boardwalk nearest the ocean, approximately seventy-five feet from where Carol and the children were playing. According to Officer Jenkins, there were no obstacles blocking defendant's view of the beach. Eventually, both the officer and the couple left the beach, leaving defendant on the boardwalk standing beside a bicycle.

Approximately two minutes later while Carol, K.B. and E.B. were still on the beach, Carol exclaimed "look at that man jerking off over there." K.B. and E.B. looked toward the boardwalk and saw defendant masturbating. Carol dispatched E.B. to alert a police officer. E.B. ran to Officer Jenkins who described her as being frantic, excited, and "kind of scared." When E.B. was

unable to tell Officer Jenkins what had happened, or to "put into words what she wanted to say" to inform the officer of what she had observed, Carol arrived with K.B., who was also excited. Carol explained why a police officer was needed.

Defendant was facing the ocean while touching his intimate parts. At no time did he appear to notice anyone in particular or appear to make eye contact with the children even though he was facing them. Officer Jenkins testified that from where defendant was standing on the boardwalk, nothing obstructed his line of vision of Carol and the two children.

-C-

The majority below ruled that the trial court should have granted defendant's motions to acquit on the two sexual assault counts because the State's evidence lacked "the necessary relational component" to sustain defendant's convictions under *N.J.S.A.* 2C:14–2b, *i.e.,* "specific victimization and aggressive assaultive conduct." *Zeidell, supra,* 299 *N.J.Super.* at 619–20, 691 *A.2d* 866. The court reasoned that unlike the factual situation in *State v. Ridgeway,* 256 *N.J.Super.* 202, 606 *A.2d* 873 (App.Div.), *certif. denied,* 130 *N.J.* 18, 611 *A.2d* 656 (1992), where the defendant called an eleven-year-old girl over to his car to watch him masturbate, here, defendant was not in close proximity to the children and never looked in their direction. *Zeidell, supra,* 299 *N.J.Super.* at 619, 691 *A.2d* 866. Furthermore, although the panel concluded that the language "with a victim" in the statutory definition of sexual assault does not require physical contact between the actor and the victim, the panel held that it does require that there be a victim. *Id.* at 620, 691 *A.2d* 866. The court rejected the State's argument that the primary distinction between the sexual assault statute, *N.J.S.A.* 2C:14–2b, and the lewdness statute, *N.J.S.A.* 2C:14–4b(1), is that sexual assault requires more than the mere "exposure" of intimate parts. *Id.* at 621, 691 *A.2d* 866. Rather, citing John M. Cannel, *New Jersey Criminal Code Annotated,* comment 3 on *N.J.S.A.* 2C:14–4b

(1996–1997), the majority found the primary distinction between the statutes to be the requisite relationship between the actor to the victim. *Zeidell, supra,* 299 *N.J.Super.* at 621–22, 691 *A.*2d 866. The majority concluded that to commit sexual assault, the actor must cause, invite, or specifically solicit the underage person to view the conduct, whereas incidental or casual observation is sufficient to constitute lewdness. *Ibid.*

The dissenting member of the panel disagreed with the majority's conclusion that *N.J.S.A.* 2C:14–2b required the State to prove "specific victimization and aggressive assaultive conduct" directed toward a victim. *Id.* at 625, 691 *A.*2d 866. "All that is necessary is that the sexual act be 'in the view of the victim whom the actor knows to be present.'" *Ibid.* (citation omitted). The dissenting judge found that the State presented sufficient evidence to permit the jury to reasonably infer that defendant knew the children, who were only seventy-five feet away, were present on the beach and in a position to observe him. *Id.* at 625–26, 691 *A.*2d 866. The dissent found it unnecessary for the State "to obtain an admission by the defendant that he was aware of the victims' presence or their observation of him. Defendant's awareness may be inferred by the circumstances." *Ibid.* Finally, the dissenting judge was of the view that the fact that the children inadvertently observed defendant, or that he did not target them, is of no legal significance. *Id.* at 626, 691 *A.*2d 866. Defendant's guilt should not hinge on whether a child fortuitously fails to observe the actor. *Ibid.* It is sufficient that defendant knew the children were present. *Ibid.*

## II

### -A-

The State argues that the majority opinion in the Appellate Division improperly engrafted an additional element onto the tender-years-sexual assault offense by requiring the State to prove that defendant specifically solicited K.B. and E.B. to watch him

masturbate on the boardwalk. The State maintains that when the pertinent subsections of the Code are read in conjunction with each other, it becomes apparent that the Legislature has clearly and unambiguously defined the tender-years-sexual assault offense.

-B-

This appeal requires us to determine how the Legislature intended to distinguish when certain proscribed conduct constitutes second-degree-tender-years-sexual assault rather than fourth-degree lewdness. The answer must be based on the language and structure of the New Jersey Code of Criminal Justice (Code). The Code defines the substantive offenses and the required mental state, and the terms used in the statutory description of the offenses. It also contains principles of construction. We first outline the relevant Code provisions that provide the framework for determining whether the sexual assault convictions in this case were proper.

The Code acknowledges that some of the general purposes to be served by defining terms and concepts used to describe substantive offenses and mental culpability are "[t]o give fair warning of the nature of the conduct proscribed[,] ... [t]o differentiate on reasonable grounds between serious and minor offenses[,] ... [and][t]o define accurately the act and mental state which constitute each offense." *N.J.S.A.* 2C:1–2a(4), (6). The Code also provides that when the language of its provisions "is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved." *N.J.S.A.* 2C:1–2c. Consistent with the Code's requirements, and with the requirements of constitutional due process, we must decide whether the statutory description of the tender-years-sexual assault was unambiguous.

Under the Code, a tender-years-sexual assault is defined as "an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim."

424

*N.J.S.A.* 2C:14–2b. A victim in this case is "a person alleging to have been subjected to offenses proscribed by" Chapter 14 of the Code. *N.J.S.A.* 2C:14–1b. An act of sexual contact

> means an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. Sexual contact of the actor with himself must be in view of the victim whom the actor knows to be present.

[*N.J.S.A.* 2C:14–1d.]

The drafters of the Code as proposed in 1971 included under sexual assaults an offense called sexual contact. 1 *Final Report of the New Jersey Criminal Law Revision Commission* § 2C:14–4, at 62 (1971) (*Final Report*). Sexual contact with a child less than twelve years old was the most serious of such sexual assaults. *Id.* at 63. The definition of sexual contact was taken from the Model Penal Code Tentative No. 4 (1953). 2 *Final Report, supra,* commentary to § 2C:14–4, at 200. Sexual contact was defined as "any touching of the sexual or other intimate parts of a person for the purpose of arousing or gratifying sexual desire." 1 *Final Report, supra,* § 2C:14–4, at 63.

Between the adoption of the Commissioner's Report in 1971 and the adoption of the Code in 1978, the Legislature changed the 1971 proposed definition of sexual contact to include the act of touching one's own intimate parts. The Legislature modeled the sexual offenses chapter, Chapter 14, after a model statute drafted by the Philadelphia Center for Rape Concern. *State In Interest of M.T.S.,* 129 *N.J.* 422, 440, 609 *A.2d* 1266 (1992) (citing Leigh Bienen, *Rape II,* 3 *Women's Rts. L. Rep.* 90 (1977)). The Philadelphia Center for Rape Concern had, in turn, modeled its statute primarily on selected provisions of the Michigan Criminal Sexual Conduct Statute, *Mich. Stat. Ann.* § 28.788(4)(b) (Callaghan 1990), and on reform statutes in New Mexico, Minnesota, and Wisconsin. *M.T.S., supra,* 129 *N.J.* at 440, 609 *A.2d* 1266 (citing Bienen, *supra,* 6 *Women's Rts. L. Rep.* at 207).

The Philadelphia Center for Rape Concern's model statute defined "sexual contact" as "the intentional *touching of the vic-*

*tim's clothing covering the immediate area of the victim's sexual or intimate parts.* Sexual contact shall include the *victim's touching the sexual or intimate parts of the offender* when such touching is reasonably construed as being for the sexual arousing or gratification of the actor." Cannel, *supra,* at comment 4 on *N.J.S.A.* 2C:14–1 (emphasis added). When enacted, however, the New Jersey Legislature changed that definition to touching "for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." *N.J.S.A.* 2C:14–1d. Additionally, the Legislature added the sentence, *"Sexual contact of the actor with himself* must be in view of the victim whom the actor knows to be present[,]" to clarify that the actor's touching of himself was included. *N.J.S.A.* 2C:14–1d; Cannel, *supra,* comment 4 on *N.J.S.A.* 2C:14–1 (emphasis added). Neither of the statutes on which the Philadelphia Center for Rape Concern predicated its model statute, nor any other state statutes define "sexual contact" similarly to include an actor's touching of himself or herself. Nevertheless, we must strive to give effect to the language of the statute as a whole. *See Peper v. Princeton Univ. Bd. of Trustees,* 77 *N.J.* 55, 68, 389 *A.*2d 465 (1978) ("A construction of a legislative enactment which would render any part thereof superfluous is disfavored."); *N.J.S.A.* 2C:1–2c. Consequently, the statute must be interpreted to reach the class of defendants not covered by the original language proposed in 1971.

Prior case law provides some insight into the legislative intent. Although very few judicial decisions discuss the elements necessary to convict a defendant under *N.J.S.A.* 2C:14–2b, those decisions that do, tend simply to restate the statutory terms. *See, e.g., State v. J.S.,* 222 *N.J.Super.* 247, 257–58, 536 *A.*2d 769 (App.Div.), *certif. denied,* 111 *N.J.* 588, 546 *A.*2d 513 (1988) (stating that *N.J.S.A.* 2C:14–2b requires act of sexual contact with victim under thirteen years of age by defendant who is four years older than victim); *State v. Gray,* 206 *N.J.Super.* 517, 522, 503 *A.*2d 327 (App.Div.1985), *certif. denied,* 103 *N.J.* 463, 511 *A.*2d 646 (1986) (indicating that *N.J.S.A.* 2C:14–2b makes it crime of sexual assault if actor, who is at least four years older than victim,

commits act of sexual contact with victim less than thirteen years of age). A Chancery Division case held that *N.J.S.A.* 2C:14–2b, when read in context with *N.J.S.A.* 2C:14–3b, *N.J.S.A.* 2C:14–2c(1), and *N.J.S.A.* 2C:14–1d, requires the State to prove the following elements in order to obtain a conviction under *N.J.S.A.* 2C:14–2b: "1) the defendant is at least four years older than the victim, who was less than 13 at the time of the alleged sexual assault; and 2) that a sexual contact occurred *through the use of physical force or coercion* which caused no severe personal injury to the victim." *State in Interest of A.N.*, 267 *N.J.Super.* 158, 160, 630 *A.*2d 1183 (Ch.Div.1993) (emphasis added). Physical force or coercion, however, are not mentioned in the statutory scheme defining the offense when the victim is less than thirteen years old; nor does the offense require proof of any injury to the victim.

In *State v. Ramos,* 203 *N.J.Super.* 206, 496 *A.*2d 390 (Law Div.1985), the Law Division explained that in enacting Chapter 14, the Legislature intended to separate public sexual crimes from private sexual crimes. In *Ramos,* a defendant who touched the intimate parts of a seven-year-old child, requested that, in addition to charging the jury on the crimes of aggravated sexual assault and sexual assault, the court charge the jury on the lesser included offense of lewdness. *Id.* at 207, 496 *A.*2d 390. In rejecting the defendant's argument, the court held that the Legislature intended the lewdness statute, *N.J.S.A.* 2C:14–4, to "encompass only those sexual acts which are either *observed by others or intended or expected to be observed by others."* *Ramos, supra,* 203 *N.J.Super.* at 209, 496 *A.*2d 390 (emphasis added). Conversely, the court found that the Legislature intended the sexual assault statute, *N.J.S.A.* 2C:14–2, and the criminal sexual contact statute, *N.J.S.A.* 2C:14–3, to prohibit *"private* sexual misconduct." *Ramos, supra,* 203 *N.J.Super.* at 209, 496 *A.*2d 390 (emphasis added). Because the defendant's conduct occurred in private, the court found the lewdness statute inapplicable. *Id.* at 210, 496 *A.*2d 390. Here, too, we disapprove of the court's interpretation of the tender-years-sexual-assault statute.

There is only one reported New Jersey decision that discusses the application of *N.J.S.A.* 2C:14–2b to an actor who touches his intimate parts in front of a child but does not physically touch the child or have the child touch him. In *Ridgeway, supra,* a defendant pled guilty to the crime of second-degree sexual assault but later appealed, claiming that there was an inadequate factual basis for the plea. 256 *N.J.Super.* at 203, 606 *A.*2d 873. There, the defendant pulled his car to the side of the road and asked an eleven-year-old for the time when she came to his car. *Id.* at 204, 606 *A.*2d 873. When the girl stood near the car window, she could see that the defendant had his pants open and was "playing with" his private parts. *Id.* at 205, 606 *A.*2d 873. The defendant asked the girl, "Would you like this?" *Ibid.* Frightened, the girl ran away. *Ibid.* The defendant claimed that *N.J.S.A.* 2C:14–2b required a showing of actual physical contact between the actor and the victim. *Ibid.* Rejecting that contention, the Appellate Division held that *N.J.S.A.* 2C:14–2b clearly does not require physical contact between the actor and the victim. *Id.* at 206, 606 *A.*2d 873. The court also concluded that the statutory language defining tender-years-sexual assault was clear. *Ibid.*

There are other reported decisions implicating *N.J.S.A.* 2C:14–2b based on an actor touching his intimate parts in the presence of young children, or the actor either touching the children, or persuading them to touch him. *See, e.g., State v. Slattery,* 239 *N.J.Super.* 534, 540, 571 *A.*2d 1314 (App.Div.1990); *State v. Schumann,* 218 *N.J.Super.* 501, 504–05, 528 *A.*2d 68 (App.Div.1987), *aff'd in part, rev'd in part,* 111 *N.J.* 470, 545 *A.*2d 168 (1988); *State v. Hess,* 198 *N.J.Super.* 322, 326, 486 *A.*2d 1301 (App.Div. 1984).

■ Based on the structure and legislative history of the Code, we believe the Appellate Division was mistaken when it concluded that the sexual assault charges should have been dismissed at the end of the State's case "because the necessary relational component for a conviction on these counts was missing." *Zeidell, supra,* 299 *N.J.Super.* at 619, 691 *A.*2d 866. The court's reasoning

that the State was required to prove specific victimization and aggressive assaultive conduct expands the legislative description of the offense.

When the controlling statutory provisions of the Code are read together, we find that a tender-years-sexual assault under *N.J.S.A.* 2C:14–2b contains three key elements. They are: (1) a victim who is less than thirteen years old, (2) a defendant-actor who is at least four years older than the victim, and (3) a sexual contact with a victim under the critical age. The sexual contact with a victim involves an intentional or purposeful touching of an intimate part. There are three types of intentional sexual touchings: the actor may touch himself or herself, the actor may touch the victim, or the victim may touch the actor. Each such intentional touching must be for at least one of four purposes: either degrading or humiliating the victim, or sexually arousing or sexually gratifying the defendant-actor. Finally, if the touching is by the actor of himself or herself, the sexual touching must be in view of the victim whom the actor knows to be present.

-C-

Because defendant argues that his conduct only amounted to fourth-degree lewdness and not sexual assault, we must also focus on that offense. Like the tender-years-sexual assault, the lewdness statute that became part of the Code in 1978 was different from the 1971 proposal.

The proposed Code contained two forms of lewdness. One form was called indecent exposure, defined as the exposing of the actor's genitals for arousing or sexually gratifying the actor or any person other than the actor's spouse "under circumstances in which [the actor] knows his conduct is likely to cause affront or alarm." 1 *Final Report, supra,* § 2C:14–5, at 63. The indecent exposure under the proposed Code was grouped with the Chapter 14 offenses because exposure of the genitals for sexual gratification is often interpreted as threatening sexual aggression. 2 *Final Report, supra,* commentary to § 2C:14–5, at 200–01.

The second form of lewdness in the proposed Code was identified as public indecency or open lewdness. It was defined as "any lewd act, which [the actor] knows is likely to be observed by others who would be affronted or alarmed." 1 *Final Report, supra,* § 2C:34–1, at 120. That proposed offense was generally intended to prohibit conduct that amounted to "gross flouting of community standards in respect to sexuality or nudity in public." 2 *Final Report, supra,* commentary to § 2C:34–1, at 301.

Although the proposed Code did not further define lewdness, decisional law described it as "conduct of a lustful, lecherous, lascivious or libidinous nature." *State v. Dorsey,* 64 *N.J.* 428, 431, 316 *A.*2d 689 (1974). It was also described as importing "some degree of sexual aberration or impurity [and] denot[ing] gross and wanton indecency in the sexual relations." *State v. Brenner,* 132 *N.J.L.* 607, 610, 41 *A.*2d 532 (E & A 1945). Blackstone defined " 'open and notorious lewdness' at common law as 'some grossly scandalous and public indecency.' " *Ibid.* (quoting 4 Blk. Com. 64). Thus, neither form of lewdness in the proposed Code included touching by the actor or the victim as occurred in the present case.

The lewdness statute under which defendant was convicted of two fourth-degree offenses was enacted as part of the Code in 1978. It provides:

a. A person commits a disorderly persons offense if he does any flagrantly lewd and offensive act which he knows or reasonably expects is likely to be observed by other nonconsenting persons who would be affronted or alarmed.

b. A person commits a crime of the fourth degree if:

(1) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or of any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a child who is less than 13 years of age where the actor is at least four years older than the child.

(2) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or of any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a person who because of mental disease or defect is unable to understand the sexual nature of the actor's conduct.

c. As used in this section:

"lewd acts" shall include the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person.

[*N.J.S.A.* 2C:14–4.]

Therefore, under the Code, lewdness can be either a disorderly persons offense or a fourth-degree crime. It is a disorderly persons offense whenever the actor engages in any flagrantly lewd and offensive act, including exposing the actor's own genitals regardless of whether done for the actor's sexual arousal or gratification, which the actor knows or reasonably expects is likely to be observed by other non-consenting persons over the age of thirteen years who would be affronted or alarmed by the conduct. *N.J.S.A.* 2C:14–4a.

Whether such exposure becomes fourth-degree lewdness depends on the identity of the victim. Fourth-degree lewdness under subsection "b(1)" occurs when the victim is under thirteen and the actor is at least four years older than the victim. *N.J.S.A.* 2C:14–4b(1). When the victim suffers from a mental disease or defect that makes the victim unable to understand the sexual nature of the actor's conduct, an exposure is fourth-degree lewdness under subsection "b(2)." *N.J.S.A.* 2C:14–4b(2).

Under the Code, criminal mental culpability frequently helps to determine both the nature of the substantive offense and its gradation. The Code contains four states of criminal mental culpability: purposely, knowingly, recklessly, and negligently. *N.J.S.A.* 2C:2–2(a). Those four mental states represent the Code's attempt " 'to achieve greater individual justice through a closer relation between guilt and culpability.' " *State v. Harmon,* 104 *N.J.* 189, 201, 516 *A.*2d 1047 (1986) (quoting Knowlton, *Comments Upon the New Jersey Penal Code,* 32 *Rutgers L.Rev.* 1, 2 (1979)).

■ Fourth-degree lewdness consists of an actor intentionally "exposing" or displaying himself or herself for sexual arousal or gratification under circumstances in which the actor "knows or reasonably expects" that he or she is likely to be observed by a child less than thirteen years old. *N.J.S.A.* 2C:14–4b(1). Thus,

lewdness is limited to exposing or displaying an actor's intimate parts rather than touching them. For example, a "flasher" or "streaker" may expose the genitals without touching them.

The underlying conduct for second-degree-tender-years-sexual assault, in contrast, involves the actor "intentionally" touching his or her intimate parts (self-contact or victim-contact) for arousal or sexual gratification "in view" of an underage child whom the actor "knows" to be present. *N.J.S.A.* 2C:14–2b, 14–1d. Although the exposure required for lewdness and the touching required for sexual assault both must be intentional and for the purpose of arousal or gratification, the actor's mental state toward the underage child is significantly different for each offense. The non-contact lewdness offense requires the actor to expose or display himself or herself "know[ing] or reasonably expect[ing]" that an underage child will observe the conduct. Under the Code, this mens rea equates with the actor knowing or intending that a child view him or her. *See N.J.S.A.* 2C:2–2b(1) (stating person acts purposely if he is aware of the existence of the attendant circumstance or he "believes or hopes" that it exists); *N.J.S.A.* 2C:2–2b(2) (stating person acts knowingly if he is aware of the existence of an attendant circumstance or is aware of the existence of a high probability of its existence). In contrast, sexual assault requires only that the actor engage in a sexual touching "in view of" an underage child whom the actor knows to be present.

Clearly, then, unlike lewdness, sexual assault does not require the underage child to actually observe the touching. The requirement "in the view of" an underage child does not require any *mens rea* at all; it is a factual question: Was the prohibited act done in a child's field of vision or not? Alternatively, "in view of" could be interpreted to mean that there were unreasonable risks that an underage child present might view the act. Here, evidence established that defendant knew the children were present and that he was in their field of vision. The testimony that the children actually saw the prohibited act establishes that the act must have been in their view. Thus, where there is an actual underage child who has actually viewed the defendant and as in

this case, whose presence is known by the defendant, the Court need not reach the more difficult question of whether the defendant would be guilty if he engaged in sexual contact in front of a child whom he knew to be present and within view, but who, for whatever reason, did not actually view or observe the conduct. In the latter situation, the "in view of" standard could constitute a basis for strict liability under the Code and the defendant might be guilty regardless of whether a child whom he knew to be present actually witnessed the act. In contrast, the "in view of" standard might constitute a basis for guilt if there was an unreasonable risk that a child might see the defendant engage in the sexual contact. Those issues, however, are not raised by the facts in this case, and we decline to reach them.

There are sound reasons for the distinction between fourth-degree lewdness and tender-years-sexual assault, as well as their different mens rea requirements. Lewdness as an observable act is not as egregious as the tender-years-sexual assault. It is more shocking and threatening to observe an actor touching intimate parts for arousal or gratification than it is to observe an exposure or display. Moreover, conduct involving sexual contact is not ambiguous—its gratification comes from the contact; its purposefulness and intent are crystal clear, and consequently the severity of its impact, if it is actually seen, is more predictable, and the risk of harm, even if it is not seen, is greater. Mere exposure, in contrast, can be a more ambiguous form of conduct. It is not inherently or obviously gratifying to expose the genitals; rather, gratification comes only from the subjective belief by the actor that he or she is being viewed.

We are compelled by the strictures and language of the Code to conclude that the Legislature did not create a unified crime of tender-years-sexual assault and fourth-degree lewdness. *Ridgeway, supra,* 256 *N.J.Super.* at 206, 606 *A.2d* 873. Our conclusion is buttressed by the reasoning used in pre-Code decisional law holding that private lewdness did not encompass the crimes of adultery, fornication, and obscenity simply because, had the act of fornicating been committed openly, it would have been considered

public lewdness. *Dorsey, supra,* 64 *N.J.* at 431–32, 316 *A.*2d 689. The Court's rationale was that adultery, *N.J.S.A.* 2A:88–1, fornication, *N.J.S.A.* 2A:110–1, and obscenity, *N.J.S.A.* 2A:115–1.1 to – 3.10, were proscribed by separate enactments. *Dorsey, supra,* 64 *N.J.* at 432, 316 *A.*2d 689. Similarly, the tender-years-sexual assault and fourth-degree lewdness are proscribed by separate enactments and have different elements.

The Legislature determined that a person who touches his or her own intimate parts for sexual arousal or sexual gratification in the presence of children below the age of thirteen poses a higher risk to the safety and welfare of. those children than to children who are older. That intent is corroborated by the fact that although the Legislature created a third-degree offense of aggravated criminal sexual contact, that offense is restricted to victims who are at least thirteen and less than sixteen. *N.J.S.A.* 2C:14–3a. That offense also requires proof of a familiar relationship between the actor and the child or one of the specified aggravating circumstances. *Ibid.* What emerges is that the age of the victim is critical. A sexual touching in the presence of a child less than thirteen years old is a second-degree sexual assault if the other elements are present. When the sexual touching also includes exposing intimate parts, as occurred in the present case, lewdness becomes a lesser-included offense of the sexual assault and merger is required by the Code. *N.J.S.A.* 2C:1–8a(1); *State v. Diaz,* 144 *N.J.* 628, 637–38, 677 *A.*2d 1120 (1996).

We hold that when the pertinent sections of the Code are read together, the meaning and scope of the tender-years-sexual assault are clear and unambiguous. Although the substantive offense is criminalized at *N.J.S.A.* 2C:14–2b, that statute must be read in conjunction with *N.J.S.A.* 2C:14–1b, which defines victims, *N.J.S.A.* 2C:14–1d, which defines sexual contact, *N.J.S.A.* 2C:2–2(a), which defines the requisite mental culpability, and *N.J.S.A.* 2C:14–3a, which defines aggravated criminal sexual contact so as to preclude a prosecution of such an offense when the victim is less than thirteen years old because the appropriate offense is the tender-years-sexual assault.

. III

■ We also agree with the Appellate Division dissenting member's conclusion that the evidence was sufficient to permit the jury to conclude that defendant committed an act of sexual contact with K.B. and E.B. and that specific victimization was not required. The majority concluded that because defendant did not look at the two children, or make any gesture toward either of them, and because neither of the children was in close proximity to defendant, the State failed to prove that defendant had sexual contact with either of the children. *Zeidell, supra,* 299 *N.J.Super.* at 619, . 691 *A.*2d 866.

As we previously noted, the tender-years-sexual assault in this case required proof of sexual contact of defendant's own genitals in view of K.B. and E.B., whom defendant knew to be present. Based on the evidence, the jury could reasonably have concluded that it was practically certain that defendant saw the children. The jury apparently believed the children when they testified that they saw defendant masturbating as they sat on the beach approximately seventy-five feet from where defendant's conduct occurred. Nothing obstructed their view of him, and nothing obstructed his view of them. Under the Code's knowing criminal culpability standard, the State was obligated to prove that there was a high probability that defendant was aware of the presence of the children on the beach while masturbating. K.B., E.B. and their cousins were the only children on the beach at the time. The jury could consider the clear visibility of the children coupled with the fact that they saw him, and the fact that Officer Jenkins saw the children on the beach only minutes before the criminal act occurred, when deciding the mental culpability issue.

■ Although the Code does not define the word "present," it must nevertheless be accorded its ordinary meaning absent an indication of some special meaning. *State v. Afanador,* 134 *N.J.* 162, 171, 631 *A.*2d 946 (1993).

The plain meaning of "presence" is an "[a]ct, fact, or state of being in a certain place and not elsewhere, or within sight or call,

at hand, or in some place that is being thought of." *Black's Law Dictionary* 1183 (6th ed.1990). The Legislature has given no indication of an intent to attribute a special meaning to "presence." The ordinary meaning of "presence" here is that the actor knows that young children can see the actor touching his or her intimate parts. In the face of the compelling evidence presented, the jury could reasonably have found that defendant knew the children could and would see him touching his genitals. The viewing area included the beach where the children had been playing. Therefore, all children known to a defendant to have been within an eye-shot of his or her conduct were present when the proscribed conduct occurred.

■ We reject the Appellate Division majority's attempt to engraft a new element to the offense by requiring the actor to make some overt act toward the victims to induce their participation in the actor's conduct. Reliance on *Ridgeway* for that proposition is misplaced. Although that was a fact in *Ridgeway,* the court properly did not conclude that it was a required element. *Ridgeway, supra,* 256 *N.J.Super.* at 205–06, 606 *A.*2d 873. Sufficient victimization occurs when, in view of an underage child whom the actor knows is present, an actor commits an act of sexual contact by touching himself or herself, by a solicited or coerced touching of the actor's intimate parts by the victim, or by the actor touching the child's intimate parts. Under each scenario, the child becomes a victim in that the child has "been subjected to [a sexual contact] proscribed by" the Code. *N.J.S.A.* 2C:14–1b. Further evidence of victimization in this case is based on the fact that K.B. and E.B. were extremely frightened by what they observed. The Code does not require the actor to solicit or invite the young victims to observe the proscribed conduct before the conduct ripens into a tender-years-sexual assault.

## IV

Although the appeal is before us based on the dissenting opinion that does not raise an issue of excessiveness of sentence, defen-

dant raised that issue in the Appellate Division. *Zeidell, supra,* 299 *N.J.Super.* at 617, 622, 691 *A.*2d 866. Defendant contended "that the trial judge should not have imposed maximum ten-year base terms on the second-degree convictions." *Ibid.* In view of the Appellate Division's disposition, the court found it "unnecessary to discuss the sentencing issue." *Id.* at 622, 691 *A.*2d 866. In light of our decision, we remand the case to the Appellate Division to decide the sentencing issue.

The judgment of the Appellate Division is reversed. The matter is remanded to the Appellate Division to decide the excessiveness of sentence issue.

STEIN, J., dissenting.

I would affirm the judgment of the Appellate Division substantially for the reasons articulated in its opinion. *State v. Zeidell,* 299 *N.J.Super.* 613, 619–22, 691 *A.*2d 866 (App.Div.1997). As that opinion clearly demonstrates, our Code contemplates an act of specific victimization to sustain a conviction under *N.J.S.A.* 2C:14–2b. See *State v. Ridgeway,* 256 *N.J.Super.* 202, 204–06, 606 *A.*2d 873 (App.Div.) (upholding guilty plea to sexual assault when facts indicated that defendant specifically targeted eleven-year-old girl to witness defendant touching himself), *certif. denied,* 130 *N.J.* 18, 611 *A.*2d 656 (1992); Cannel, *New Jersey Criminal Code, Annotated,* comment 4 on *N.J.S.A.* 2C:14–1 (1997–98) (noting that "when the actor touches himself . . . and either forces the victim to observe or is aware of observation by a victim under the critical age there is enough of an actor/victim relationship to amount to criminal sexual contact"). This record reveals no public act performed by defendant with sufficient intent or awareness that it be witnessed by children under the age of thirteen.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, GARIBALDI and COLEMAN—5.

*For affirmance*—Justice STEIN—1.