826 A.2d 808 (2003)
362 N.J. Super. 55
STATE of New Jersey, Plaintiff-Respondent,
v.
Stephen BURKE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 21, 2003.
Decided July 8, 2003.
*809 William J. Farley, Jr., attorney for appellant.
Peter C. Harvey, Acting Attorney General, attorney for respondent (Carol M. Henderson, Assistant Attorney General, of counsel and on the brief).
Before Judges KESTIN, FALL and WEISSBARD.
*810 The opinion of the court was delivered by FALL, J.A.D.
In this appeal, we examine application of N.J.S.A. 2C:18-3c, the so-called "peeping Tom" provision contained in the trespass section of the New Jersey Code of Criminal Justice to acts of video voyeurism occurring within a residential dwelling. We conclude that the conduct alleged in the indictment is not proscribed by the provisions of N.J.S.A. 2C:18-3c. Accordingly, we reverse and remand for entry of an order dismissing the indictment.
Defendant Stephen Burke was charged in Monmouth County Indictment Number XX-XX-XXXX with fourth-degree trespass, contrary to N.J.S.A. 2C:18-3c by, on or about June 10, 2000, "peering into a window or other opening of a dwelling, knowing he is not licensed or privileged to do so, for the purpose of invading the privacy of B.R. and/or J.B., under circumstances in which a reasonable person in the dwelling or structure would not expect to be observed[.]"
The State contends it would be able to establish the following facts at trial. On June 10, 2000, defendant was residing at 364 First Avenue, Manasquan. On that date, he had two female guestsB.R. and J.B.staying at his residence. Defendant owned and operated a taxi service. At approximately 4:00 p.m., defendant left the residence to operate his taxi service, and did not return to the premises until after midnight on June 11, 2000. B.R. and J.B. remained at the 364 First Avenue residence.
After taking a shower in the bathroom of the residence, B.R. noticed that the floral arrangement located on a shelf had a wire leading into it. B.R. moved the flowers and discovered a concealed video camera. B.R. informed J.B. of her discovery and the two followed the wire from the camera into an adjoining laundry room and found, hidden behind a curtain, a video cassette recorder with a tape inside it. B.R. and J.B. played the tape and saw that it contained images of them taking showers and using the bathroom. B.R. and J.B. also found another tape that, when played, showed defendant testing and setting up the camera and recording device. B.R. and J.B. took the two tapes and the video camera, and left defendant's residence.
On June 12, 2000, B.R. and J.B. went to the Manasquan Police Station with the tapes and video camera and reported the matter. On June 13, 2000, the police searched defendant's residence and found a monitor and box for the video camera.[1]
Upon questioning by the police, defendant stated that his purpose in video recording B.R. and J.B. was to see them naked. Defendant admitted he had left the camera in the bathroom knowing that it would monitor and film anyone who entered the room; that he knew B.R. and J.B. were coming to stay at his residence and did not know about the camera; that he had placed the camera in the bathroom, a place where he knew those using the bathroom had a reasonable expectation of privacy; that he knew B.R. and J.B. would not want to be filmed in the bathroom; and that he had the ability to remove the camera or turn it off before B.R. and J.B. arrived, but did not.
On or about August 13, 2001, defendant filed a motion to dismiss the indictment, contending the alleged conduct did not constitute a violation of N.J.S.A. 2C:18-3c. *811 The motion was opposed by the State, and argued in the Law Division on October 26, 2001. The judge denied the motion, concluding that the State was not obligated to prove that the persons being observed knew that they were being observed or that the defendant had actually observed anyone.
On January 14, 2002, defendant entered a conditional plea to the trespass charge, reserving his right to appeal from the denial of his motion to dismiss the indictment. On March 15, 2002, defendant was sentenced to a period of one year probation. A fine of $1,000 was imposed, along with the applicable VCCB assessment.
On appeal, defendant argues that N.J.S.A. 2C:18-3(c) does not prohibit, as unlawful, the conduct alleged here. The statute provides, as follows:
c. Peering into windows or other openings of dwelling places. A person commits a crime of the fourth degree if, knowing that he is not licensed or privileged to do so, he peers into a window or other opening of a dwelling or other structure adapted for overnight accommodations for the purpose of invading the privacy of another person and under circumstances in which a reasonable person in the dwelling or other structure would not expect to be observed.

[N.J.S.A. 2C:18-3c.]
In a prosecution pursuant to N.J.S.A. 2C:18-3c, the State must prove beyond a reasonable doubt that the defendant: (1) "peered into" a window or other opening of a dwelling or other structure adapted for overnight accommodations; (2) had the purpose to invade the privacy of B.R. and/or J.B.; (3) the circumstances were such that a reasonable person in the dwelling or structure would not expect to be observed; and (4) that defendant knew he was not licensed or privileged to peer into the window or other opening of the dwelling.
Although the facts advanced by the State established that defendant intended to invade the privacy of B.R. and J.B., that the circumstances were such that B.R. and J.B. would not expect to be observed while in the bathroom, and that defendant knew he was not licensed or privileged to record B.R. and J.B., the State does not contend that it can establish that defendant "peered" into a window or other opening of the dwelling.
"[I]n criminal cases we are guided by the rule of lenity, which requires us to construe penal statutes strictly and interpret ambiguous language in favor of the criminal defendant." State v. Livingston, 172 N.J. 209, 218, 797 A.2d 153 (2002); see State v. Burford, 163 N.J. 16, 19, 746 A.2d 998 (2000). A term used in a criminal statute must be accorded its ordinary meaning absent an indication of some special meaning. State v. Zeidell, 154 N.J. 417, 434, 713 A.2d 401 (1998). Additionally, when reviewing a criminal statute as a whole, the probable legislative intent must be applied. State v. Wallace, 158 N.J. 552, 558, 730 A.2d 839 (1999); Zeidell, supra, 154 N.J. at 425, 713 A.2d 401.
Applying these principles of construction, we conclude that N.J.S.A. 2C:18-3c requires that the prohibited "peering into" be from a location outside, and into, the "window or other opening of a dwelling or other structure adapted for overnight accommodations[.]" We reach that conclusion from the plain language of the statute; the placement of the offense within the trespass statute; and our review of the predecessor "peeping Tom" statutory provision, N.J.S.A. 2A:17-31.1, adopted by L. 1956, c. 185, which was repealed when not incorporated into the New Jersey Criminal Code of Justice, when it was adopted effective September *812 1, 1979. See State v. Fuchs, 230 N.J.Super. 420, 428-29, 553 A.2d 853 (1989). N.J.S.A. 2C:18-3c was enacted by L. 1997, c. 15, effective January 31, 1997. "No entry is required for this new crime, only the `peering into' a dwelling for the purposeof invading the privacy of another, who would reasonably not expect to be observed under the circumstances." John M. Canell, New Jersey Criminal Code Annotated, comment 3 to N.J.S.A. 2C:18-3 (2003). Clearly, the statute requires an intrusion into the dwelling from a vantage point outside that dwelling.
Since the State's proffered proofs could not establish that essential element of the offense, we are constrained to reverse. The type of video voyeuristic surveillance that occurred here simply was not criminalized by the language or intent of this statute. As has been noted by one commentator:
The act of voyeurism is becoming an increasingly prevalent and unsettling threat to human dignity and the right to privacy. The "peeping Tom" of yesterday is now armed with a new arsenal that threatens more than just the unsuspecting victim standing by an open window. With the development and advancement of surveillance technology, voyeurism has evolved into something an increasing number of people suspect and fear. The accessibility of small video cameras and other viewing or recording methods eases the barriers for perverts to observe others engaged in otherwise personal activities.
* * * * * *
States must move quickly to adopt privacy statutes that force violators to face criminal prosecution. Only then will victims of video voyeurism be assured that these voyeurs are prohibited from terrorizing them and others in the future. Furthermore, adoption of state criminal statutes will prevent others from participating in video voyeurism or other similar behavior. Unfortunately, the number of states with criminal statutes aimed at curtailing voyeurism of any kind is surprisingly low. Presently, only 24 states specifically address the act of voyeurism, or similar behavior, as a criminal offense in a specific statute. A few states include peeping Tom activities under other statutes such as disorderly conduct, yet do not have a specific statute aimed directly at voyeurism.

[Maria Pope, "Technology Arms Peeping Toms With a New and Dangerous Arsenal: A Compelling Need for States to Adopt New Legislation," 17 J. Marshall J. Computer & Inf. L. 1167, 1168, 1182 (Summer 1999) (emphasis added).]
See also Verena Dobnik, Victims Urge State To Make Video Voyeurism A Crime, N.Y. Newsday, May 28, 2003 (reporting support for a bill pending in the New York Legislature that would make video voyeurism a crime).
Whether video voyeurism that surreptitiously occurs from inside a dwelling should be criminalized is a matter for the Legislature to address, not this court. We hasten to add, however, that we find without merit the defendant's contention that he could not have been prosecuted pursuant to N.J.S.A. 2C:18-3c because he had not viewed the surreptitiously-recorded videotape of the activities of B.R. and J.B. inside his residence. If, through his use of the video camera, defendant had "peered" into the dwelling from a location outside the dwelling, the fact that he never actually viewed the videotape recording of that "peering" would not have barred his prosecution. It is the "peering into" that is the prohibited conduct, whether that be personally or through use of an electronic device.
*813 The judgment of conviction is vacated and the matter is remanded for entry of an order dismissing the indictment.
NOTES
[1] Although not clear from the record on appeal, apparently a search warrant had been obtained authorizing the search of defendant's residence.