74 N.J. Super. 434 (1962)
181 A.2d 515
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BENEDICT RAYMOND, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1962.
Decided May 25, 1962.
*436 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Calvin J. Hurd argued the cause for appellant.
Mr. Peter Murray, Assistant Prosecutor, argued the cause for plaintiff (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendant appeals from a conviction upon a two-count indictment which charged him, in the first count, with having been "in private guilty of an act of lewdness" with one P, contrary to N.J.S. 2A:115-1, and, in the second count, with then and there forcing and inducing said P "to submit to the doing of an act tending to debauch the said [P] and impair the morals of the said [P]," contrary to N.J.S. 2A:96-3.
Defendant's defense was that of an alibi. He did not take the stand, but produced witnesses who said he was elsewhere at the time of the alleged crime.
P testified that on Saturday, September 10, 1960, at about 6 P.M. he and his boy friend C went to the home of one B, an adult; B gave them money to go to the movies; they left the movies about 11:30 P.M. and started to hitchhike home; defendant picked them up in his automobile, took them to his apartment, gave them liquor and other *437 refreshments, had relations with them described as "carnal lingualism" and, about 10 A.M. Sunday, at P's request, drove P and C to B's apartment. B then drove P and C to P's home in East Orange. B knew P's parents, having lived in the same building with them previously. B entered the apartment of P's parents with P and C, but left almost immediately. P's and C's parents then questioned the boys, who first said they had slept in an abandoned house. They finally told their parents of their stay at defendant's apartment and what allegedly happened, which led to defendant's arrest.
In his statement of questions involved defendant raises the question whether "the restriction of cross examination of juvenile witnesses concerning indecencies with one [B] not party to these proceedings a few hours before the subject acts constitutes reversible error?"
The "juvenile witnesses" were P and his friend C. Defendant's brief says "[P] stated he went to [B's] house about 6:00 P.M. * * *, just prior to going to the movies, for a soda and for the purpose of getting money from him. The true purpose of the visit (indecencies tinged with prostitution) was not disclosed to the jury due to the action of the prosecutor and the trial court in refusing defendant opportunity to interrogate along these lines." The brief concludes that this was erroneous and prejudicial because it went "to the credibility of [P], and to the impairment of his morals and whether he could be debauched, essential elements of the second count of the indictment * * *." At the oral argument before us, defense counsel added that the exclusion was prejudicial because the evidence sought "goes to the question of whether or not there was in fact force or inducement."
The element of prejudice because of inability to introduce this evidence to negative force disappeared because the trial judge instructed the jury that there was no evidence of force.
*438 As to whether the evidence sought went "to the question of * * * inducement," we hold that if defendant asked P to submit to carnal lingualism, and P did so, the mere fact that P had had similar relations with B before P met defendant would not negative inducement. N.J.S. 2A:96-3 is for the protection of children under 16. We hold that a mere invitation to a child of that age to submit to indecent acts, if accepted, is sufficient inducement to constitute the crime defined in that statute. In the case at bar the evidence showed more than mere invitation. The testimony was that defendant felt P's privates as they drove towards defendant's apartment, defendant invited P and C into the apartment, and there he gave them refreshments, including alcoholic beverages, before engaging in the act with P. Thereafter he invited P and C to stay the night, during which he repeated the act with P.
We hold also that if P submitted to the act at defendant's request, the fact that P had had previous similar relations with others did not make defendant's act one which did not tend to debauch P or impair his morals, within the meaning of N.J.S. 2A:96-3. It is not necessary for the State to prove, under that statute, that the child was not debauched, or his morals more impaired after the act than they were before. The statute forbids the performance of acts which tend to debauch the child or impair his morals  whether they actually did so is immaterial. It follows that the proffered evidence of P's prior relations with B, to prove that P was already debauched and his morals impaired, was properly excluded.
Was the evidence admissible for the purpose of attacking P's credibility? To begin with, it must be remembered that "the trial judge has broad discretion to determine the proper limits of cross-examination of a witness whose credibility is put in issue." State v. Pontery, 19 N.J. 457, 473 (1955). To determine whether that discretion was abused in this case we must examine the question asked against the background of the issues presented *439 and the evidence as it stood at the time the question was asked.
Defendant's counsel was permitted to ask P many questions on cross-examination about his friendship with and visits to B, all of which were answered. Then came the following:
"Q. Isn't it true that on that night you didn't even see Benedict Raymond but had seen [B] instead? A. No.
Q. Isn't it true that these acts that you said were performed between you and Benedict Raymond were in fact performed between you and [B]? A. No.
Q. How long had you known [B] before this night? A. We used to live in the apartment, about six years ago.
Q. Six years ago? A. We used to live there at that time and within that time I met him.
Q. You knew him for six years then? A. Yes.
Q. You visited him from time to time during the six-year period? A. Yes.
Q. You had gone up to his apartment? A. Yes.
Q. Isn't it true also that you had been intimate with him?"
When this was objected to, the judge asked "You mean on some other occasion?," to which counsel answered "Yes." Counsel did not then tell the judge, as he now argues to us in his brief, that the question referred to the evening before the crime and that its purpose was to show that P's testimony that he had gone to B's apartment only for movie money was false. Therefore, when counsel said he wished to inquire as to relations with B "on some other occasion," the trial judge properly exercised his discretion to follow the rule applied in the parallel case of statutory carnal abuse. "In a prosecution for carnal abuse under the statute, the element of non-consent is eliminated, so that evidence of sexual intercourse with other men is ordinarily incompetent as introducing an irrelevant issue," State v. Rubertone, 89 N.J.L. 285, 287 (E. & A. 1916), and such evidence ordinarily "[is] not admissible on the theory of discrediting the witness." State v. Lodeserto, 3 N.J. Misc. 1091, 1092, 130 A. 722 (Sup. Ct. 1925). See also State v. *440 Tetrault, 95 A. 669, 670 (N.H. 1915); Annotations, 140 A.L.R. 364, 376 (1942) and 65 A.L.R. 410, 425 (1930). Insofar as the subject of the excluded question is contended to have been relevant in attacking P's credibility in testifying that his visit to B was only for innocent purposes, we think that the previous interrogation of the witness, including that quoted above, sufficiently covered the point so as to obviate any claim of prejudicial error in the exclusion of the question now contested.
For the foregoing reasons, we perceive neither abuse of discretion nor prejudice in excluding the quoted question, asked of P on cross-examination.
C, who followed P on the stand, did not mention B in his direct testimony. During C's cross-examination, defense counsel asked for and received a copy of C's statement to the police, in which C had told of the visit to B before going to the movies on the night in question. Defense counsel began to interrogate C on that statement about that visit, but the prosecutor objected. The judge examined the statement and said, "Let us state for the record that the statement * * * refers to a visit at the home of [B] * * * and refers to an act of indecency there committed allegedly by [P] with [B]. This incident according to this statement evidently took place before the visit to the movies." The following ensued:
"The Court: How far do you propose to go into this matter, Mr. Hurd?
Mr. Hurd: To the extent disclosed in the statement.
The Court: To the extent what?
Mr. Hurd: Disclosed in the statement of [C].
The Court: You intend to inquire, I take it, from this witness as to what occurred according to this witness's statement at [B's] house between [P] and [B]. Is that right?
Mr. Hurd: That's right.
The Court: On what theory?

* * * * * * * *
Mr. Hurd: * * * [C] went to the house with this [P] at about 6:00 or 6:30. The witness [P] testified that the only thing that took place there was that he got some money from [B] and *441 nothing else, and was only there a matter of minutes. The statement of [C] shows quite a different set of circumstances surrounding the visit to the house and the acts that took place there. This very seriously affects the credibility of [P]. It is all the more important because the only witnesses who can establish the presence of the defendant at the alleged scene of the offense are this witness here and that same [P]."
The objection was sustained.
If the evidence sought to be elicited from C were admissible to contradict P, defendant should have called C as his witness. This defendant did not do. He sought to attack P's credibility by the cross-examination of C. Cross-examination of a witness should not ordinarily exceed the scope of direct examination; and excluding the question which was not involved in C's direct examination was within the discretion of the trial judge. There was therefore no error in sustaining the objection to the offer of such proof. The remaining reasons now urged for the admissibility of the offered proof we have dealt with in connection with the question asked of P on cross-examination.
Defendant contends that it was error to submit both counts of the indictment to the jury. No such objection was made at the trial. Nevertheless, we shall deal with the question because it is involved in an error in the sentences imposed.
Defendant demanded a bill of particulars setting forth "in detail the acts which the State contends constituted the offense alleged" in each count, and as to each count the State answered "carnal lingualism." Nevertheless, it was possible for the jury to find the defendant guilty under the first count (N.J.S. 2A:115-1) and not guilty under the second count (N.J.S. 2A:96-3), for the obvious reason that a conviction under the second count requires proof of facts beyond that required for conviction under the first count. The two statutes define separate crimes. Therefore, there was no error in submitting both counts to the jury. State v. LaFera, 35 N.J. 75, 91 (1961); State v. Begyn, 34 N.J. 35, 56 (1961).
*442 However, because the State so limited itself by the bill of particulars, we hold that the conviction under the second count necessarily included as a part thereof the private lewdness charged under the first count, just as a conviction for robbery includes the concomitant assault with intent to rob, even though the latter is by definition a separate crime. Therefore, under the facts of this case and the bill of particulars, the trial court might well have charged the jury that if it found the defendant guilty of the second count, it should not bring in a verdict under the first count because a conviction under the second count would include the charge made in the first. 23A C.J.S. Criminal Law § 1288(b), p. 698; State v. Hacker, 214 S.W.2d 413, 416 (Mo. Sup. Ct. 1948); Thoreson v. State, 69 Okl. Cr. 128, 100 P.2d 896, 900 (Okla. Crim. Ct. App. 1940); cf. 41 C.J.S. Homicide § 390, p. 206. But it was not prejudicial error to charge the jury as the trial judge did, or for the jury to bring in separate verdicts of guilty, for reasons which we shall state later. On the other hand, it would have been unwise to charge the jury that if they found the defendant guilty of the second count to find him not guilty of the first, for then the argument might be made that the verdicts should be set aside because inconsistent and contradictory.
If there had been a general verdict of guilty on this indictment, the trial judge could properly have sentenced defendant on the second count (being the more inclusive count), ignoring the first count. State v. Begyn, supra, at p. 56; State v. Friedman, 98 N.J.L. 577 (E. & A. 1923). Here, doubtless because he considered the first count factually part and parcel of the second, even though by legal definition separate, the trial judge endeavored to accomplish the same end by giving concurrent sentences upon the two counts. Cf. State v. Johnson, 67 N.J. Super. 414, 424 (App. Div. 1961). Such action has generally been held to make a conviction and sentence on an included offense not prejudicial. State v. Kaufman, 18 N.J. 75, 81 (1955); State v. Roleson, *443 14 N.J. 403, 409 (1954); Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Lewis v. United States, 263 F.2d 265 (D.C. Cir. 1958), cert. denied 359 U.S. 959, 79 S.Ct. 798, 3 L.Ed.2d 766 (1959).
However, here it was error to impose concurrent sentences. The sentences were imposed under the Sex Offenders Act, N.J.S. 2A:164-3 et seq., and each was for not more than three years at the New Jersey State Hospital, the two to be served concurrently. A sentence under the Sex Offenders Act was proper for the offense stated in the second count, but not for the one set forth in the first. N.J.S. 2A:164-3; cf. State v. Flood, 30 N.J. Super. 196 (Cty. Ct. 1954), affirmed 32 N.J. Super. 161 (App. Div. 1954). The sentence under the first count is therefore vacated. Since we have held that under the facts the first count is included in the second, no sentence need be imposed on the first count. State v. LaFera, supra; State v. Begyn, supra. Cf. State v. Perrella, 21 N.J. Super. 550, 556 (App. Div. 1952).
We have examined the remaining points raised by defendant and find them to be without merit.
The judgment of conviction on the second count is affirmed.