136 N.J. Super. 402 (1975)
346 A.2d 437
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE SOUTH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1975.
Decided October 14, 1975.
*404 Before Judges HALPERN, CRANE and MICHELS.
Mr. William L. Roughton, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Marc J. Friedman, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by MICHELS, J.A.D.
*405 Defendant was found guilty by a jury of open lewdness (N.J.S.A. 2A:115-1) and impairing the morals of a minor (N.J.S.A. 2A:96-3). He appeals.
According to the State's proofs, the 11-year-old victim and her two girl friends, both minors, went to a store located in a mall in Manalapan Township in the early afternoon of May 19, 1973. While at the candy-peanut counter in the store, defendant approached them and asked where the men's room was located. The girls said they did not know Defendant told them that if they would look for the men's room he would give them a dollar. They followed him toward the rear door of the store where the men's room was located and one of the girls pointed the men's room out to defendant. Defendant informed them that he did not want to go in the bathroom but wanted to go outside. At his direction, they followed him outside. Defendant told the victim's two girl friends to go to the front of a trailer parked at a loading platform and watch to make sure nobody came. He then told the victim to follow him to the back of the trailer truck. Although frightened, she followed defendant. They walked behind the trailer where defendant ordered the victim to watch her two friends, which she did. Then, touching her arm, he ordered her to turn around. When she turned and faced him she saw that he had his pants down and had exposed himself.
Defendant was asking his infant victim a highly improper question when there was a noise such as a door opening. The frightened girl ran to her two companions and told them to "get out of here." They left the area, and when they stopped to look back they observed that defendant was gone, and some other man had come out on the platform. Thereafter defendant was identified.
Defendant now contends that his convictions should be reversed because: (1) the trial judge erred in allowing the results of the polygraph examination in evidence because Detective Valentine, who administered the polygraph examination, was not properly qualified as an expert; (2) the *406 judge erred in denying his motion to dismiss the counts of the indictment charging open lewdness and impairing the morals of a minor at the end of the State's case, and in denying his motion for new trial, and alternatively, (3) his convictions for open lewdness and impairing the morals of a minor merged because they constituted a single criminal episode.

1
Defendant contends that Detective Valentine was not properly qualified to give expert opinion as to the result of the polygraph examination, and that the trial judge erred by ruling that the written stipulation pursuant to which defendant submitted to the polygraph examination was sufficient by itself to allow the testimony of the examiner without a specific finding that he was in fact a qualified expert.[1]
*407 We are in accord with the principle that the trial judge must make a finding that the examiner is qualified and the test administered in accordance with established polygraph techniques before the results of a polygraph examination taken pursuant to stipulation of admissibility may be introduced in evidence. See State v. McDavitt, 62 N.J. 36, 46 (1972); State v. Valdez, 91 Ariz. 274, 371 P.2d 894, 900 (Sup. Ct. 1962). See also, Annotation, "Admissibility Of Lie Detector Test Taken Upon Stipulation That The Result Will Be Admissible in Evidence," 53 A.L.R.3d 1005 (1973). We disagree, however, with defendant's contention that the trial judge failed to make a finding that the examiner was qualified and relied solely upon the stipulation in overruling defendant's objection to the polygraph evidence. A fair reading of the transcript reveals that at the conclusion of a lengthy and detailed voir dire examination of Detective Valentine's qualifications as a polygraph *408 expert, the trial judge overruled defendant's objection to the detective's opinion testimony on the ground that he was not qualified as a polygraph expert. While the trial judge did not expressly state that the detective was qualified, it can reasonably be implied from the ruling "The objection is overruled" that he found the detective sufficiently qualified to permit him to testify as an expert.
Even assuming that there is merit in defendant's argument that the trial judge grounded his ruling solely on the basis of the written stipulation of admissibility (which is not supported by the record) and therefore failed to make a finding as to the detective's qualifications (as the State now concedes), we do not deem the failure to do so sufficient to warrant a reversal of defendant's conviction or remand to the trial judge to make a specific finding on this issue. Rather, we shall, in the interest of justice, exercise our original jurisdiction and determine the qualifications of Detective Valentine on the basis of the record before us in order to completely determine the issues raised on this appeal. See N.J. Const. (1947), Art. VI, § V, par. 3; R. 2:10-5. See also, Graybar Electric Co., Inc. v. Manufacturers Cas. Co., 21 N.J. 517, 523 (1956); City of Asbury Park v. Civil Service Dept., 17 N.J. 419, 423 (1955). Cf., State v. Yough, 49 N.J. 587, 596 (1967). Our study of the thorough voir dire examination of Detective Valentine amply demonstrates and we find that Detective Valentine was qualified as an expert polygraph examiner. His opinion regarding the polygraph test results was properly admitted in evidence.

2
Defendant claims that his motion for judgment of acquittal at the end of the State's case and, alternatively, his motion for new trial following verdict should have been granted by the trial court because the State failed to prove beyond a reasonable doubt that he committed the crimes involved. *409 The thrust of defendant's argument is that the trial court erred in allowing in evidence the results of the polygraph examination because (1) such evidence could not be used to impeach his credibility since he did not testify, and (2) it could not corroborate his identification since he was not positively identified as the perpetrator of the crimes. We disagree.
The polygraph evidence corroborated other evidence presented on the State's case that defendant was the man who exposed himself to the infant victim. The victim identified defendant from a photograph shown to her by a police officer following the incident, after she had given the police a general description of defendant and assisted in the preparation of a composite drawing of him. In fact, the officer testified that the victim said at the time she picked out defendant's photograph, "That's him. I'll never forget his face." Thereafter she identified defendant in a police lineup as possibly being the man who exposed himself to her, and again identified defendant in the courtroom during the trial as looking like the man involved, although she admitted that his hair was longer and he had grown a mustache and testified she was not sure that he was the man in question. One of the other girls also identified defendant during the trial, although her identification was not positive.
The relevant questions (as distinguished from the control questions) asked defendant by Detective Valentine during the polygraph examination, such as "Are you the person who exposed his privates to the young girl in Steinbach's lot last May?" and "Last May did you request the help of three young girls at Steinbach's and then expose yourself to one of the children?" were answered by defendant, "No." Defendant's reaction to these relevant questions formed the basis for Detective Valentine's opinion that defendant was being deceptive and was not truthful. This evidence corroborated other evidence of defendant's participation in the crimes and, as such, was properly admitted by the trial court. See State v. Valdez, supra 371 P.2d at 900. It was *410 not admitted as direct proof of defendant's guilt on the crimes charged. Rather, it was admitted solely as opinion evidence by an expert and tended only to indicate whether defendant was telling the truth when tested. See State v. McDavitt, supra 62 N.J. at 47.
Thus, in the light of the foregoing, we are of the opinion that the State's evidence and the logical inferences which may reasonably be drawn therefrom were sufficient for a reasonable jury to find beyond a reasonable doubt that defendant was guilty of open lewdness and impairing the morals of a minor. R. 3:18-1; State v. Reyes, 50 N.J. 454, 458-459 (1967). Accordingly, the trial judge properly denied defendant's motion for a judgment of acquittal at the end of the State's case.
We are also satisfied from our review of the record that the denial of defendant's motion for a new trial was not a miscarriage of justice under the law. R. 2:10-1.

3
Finally, defendant contends that his convictions for open lewdness (N.J.S.A. 2A:115-1) and impairing the morals of a minor (N.J.S.A. 2A:96-3) merged since they constituted a single criminal episode. The two statutes under which defendant was indicted reveal that separate and distinct crimes are involved. Each prohibits separate and distinct criminal acts and the evidence necessary to convict under each statute is clearly different. Applying the test for merger set forth in State v. Hill, 44 N.J. Super. 110, 112 (App. Div. 1957), defendant's convictions for open lewdness and impairing the morals of a minor do not merge. See also State v. Jamison, 64 N.J. 363, 380 (1974). However, it is clear from the record that the conduct which led to the conviction for open lewdness was precisely the same conduct which led to the conviction for impairing the morals of a minor, and that under these circumstances separate sentences ought not be imposed. Therefore, we are of the *411 view that the two consecutive indeterminate sentences imposed upon defendant be deemed to be a single sentence of an indeterminate term not to exceed three years at the Diagnostic Unit, State Prison, at Rahway. See State v. Whittle, 52 N.J. 407, 411-412 (1968).
Accordingly, the judgment of convictions is affirmed and the sentences imposed thereon are modified from two consecutive sentences of an indeterminate term to a single sentence of an indeterminate term not to exceed three years.
NOTES
[1] The stipulation signed by the prosecutor, defendant and defendant's attorney provided as follows:

"It is hereby stipulated and agreed by and between the State of New Jersey, James M. Coleman, Jr., Prosecutor of Monmouth County, and George South and his counsel Christian J. Grapel that George South shall submit himself to a polygraph examination for the purpose of inquiring into the specific charges alleged in the above stated indictment(s) or accusation(s), such examination to be conducted by a qualified examiner, to be designated by the State and made known to George South and his counsel, Christian J. Grapel before such stipulation is entered into, in accordance with well-established polygraph techniques.
It is further understood by George South and his counsel, Christian J. Grapel that George South enters into said agreement freely and willingly, with full knowledge of his absolute right to refuse to be so tested, and that proof of any such refusal cannot and will not be used in any way as evidence against him at trial.
Furthermore, both the State and George South and his counsel, Christian J. Grapel, are fully aware of the consequences of George South's submission to such an examination, namely that the results of said testing (that is, the expert opinion of the examiner [and such physical and demonstrative evidence as may be necessary to enlighten the jury as to the basis for his expert opinion including the actual questions asked and the responses made thereto by George South] as to the truthfulness or falsity of the responses given by George South to questions posed by the examiner during the testing) may be introduced into evidence by either party for the jury's consideration, whether such expert opinion and physical and demonstrative evidence may be inculpatory or exculpatory. Should the expert opinion of the designated polygraph examiner be that the test results, as interpreted by him, are inconclusive regarding the truthfulness or falsity of the responses of George South inconclusive results shall not in any way be admitted into evidence by either the State or the defense. Both the State and George South and his counsel, Christian J. Grapel, further reserve the right to refuse to participate in any further testing in the above stated matter, which shall automatically terminate the stipulation, and no reference shall be made at trial in any manner whatsoever, by either side, to such polygraph testing or the subsequent refusal by either the State or George South or Christian J. Grapel to participate in further testing.
Both the State and George South and his counsel, Christian J. Grapel, reserve the right, at trial, to explore fully the examiner's background in polygraph training and experience, as bearing on his qualifications as an expert, the equipment and procedures employed in pre-testing and testing George South, as well as the nature of the questions asked.
The polygraph expert designated by the State in this matter is Lt. John J. Valentine."