764 A.2d 421

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. CHARLES G. HACKETT, DEFENDANT–RESPONDENT.

Argued September 12, 2000—Decided January 18, 2001.

*John J. Farmer, Jr.*, Attorney General of New Jersey, argued the cause for appellant (*Mr. Farmer*, attorney; *Catherine M. Foddai*, Deputy Attorney General, of counsel and on the brief).

*Michael N. Huff*, argued the cause for respondent.

The opinion of the court was delivered by

LaVECCHIA, J.

The issue in this appeal is whether the evidence adduced at the trial of a defendant accused of exposing himself to three minor girls was sufficient to sustain convictions for both fourth-degree lewdness and third-degree endangering the welfare of children. We were informed after oral argument that defendant passed away on September 26, 2000. Citing the significant public importance of addressing the relationship between these two sexual offenses, the State has urged the Court to issue an opinion notwithstanding defendant's death. Defense counsel has not objected to that request. We agree that this case involves important public issues in need of resolution. Accordingly, we elect to decide the issues presented even though the defendant has passed away. *See Zirger v. General Accident Ins. Co.*, 144 *N.J.* 327, 330, 676 *A.*2d 1065 (1996).

After a two-day trial, a jury convicted defendant, Charles Hackett, of fourth-degree lewdness, *N.J.S.A.* 2C:14–4b(1), and third-

degree endangering the welfare of children, *N.J.S.A.* 2C:24-4a. The victims were three young girls, M.M., A.S., both age eleven, and M.R.K., age thirteen. On several occasions while they were walking to their school bus stop located in front of defendant's residence in Middle Township, the girls witnessed defendant standing nude near the front window in his home. Defendant was sentenced to a four-year term on the endangering conviction and a concurrent eighteen-month term for lewdness.

The majority of the Appellate Division panel below, in reversing defendant's endangering conviction, concluded that while a defendant could be prosecuted for both crimes, the State had failed to present adequate evidence that the lewd conduct here would tend to impair or debauch the morals of a child, a requisite element of an endangering conviction. *State v. Hackett*, 323 *N.J.Super.* 460, 478, 733 *A.*2d 554 (1999). The majority also found fault with the jury instruction pertaining to the endangering charge, determining that it lacked sufficient clarity. The dissent, however, concluded that there was sufficient evidence introduced into the record upon which the endangering conviction could have been sustained.

The State appeals as of right due to the dissent below. *R.* 2:2-1(a)(2). We hold that based on the testimony offered, a jury could conclude beyond a reasonable doubt that Hackett's conduct had the capacity to impair or debauch the morals of a minor.

I.

A.

The evidence introduced by the State indicated the following. On the morning of October 2, 1996, while she was walking to her school bus stop, M.M. saw defendant standing nude in his home at a distance of approximately three or four feet from the unobstructed front window. According to M.M., defendant waved to her. On cross-examination, M.M. conceded that defendant's waving may have simply been a hand gesture made while talking on the telephone. M.M. testified that on prior occasions during that

school year, she had observed defendant standing nude near the front window while he was talking on the telephone. In all, M.M. surmised that she had seen defendant standing nude on approximately ten occasions.

A.S. observed defendant standing nude only on October 2, 1996. According to A.S., defendant was facing away from her while he was speaking on the telephone. On that same date, M.R.K., the thirteen-year old, observed defendant standing nude while talking on the telephone. M.R.K. indicated that defendant had been visible, standing naked near a window in his home. According to M.R.K., defendant "posed" for her. When questioned about what she meant by her testimony that defendant posed, M.M. responded, "[h]e was just standing there." According to M.R.K., she later approached defendant and told him, "I have been seeing somebody standing nude in your house, and I am getting sick of it because my friends are too young to see this." Defendant responded by stating that he would check his security cameras. Following this confrontation, M.R.K. did not again see defendant in the nude.

Subsequently, A.S.'s mother, T.W., was informed of the October 2 incident. It was T.W.'s recollection that in September and October 1996, defendant's windows were not shielded by either curtains or blinds, but following M.R.K.'s confrontation with him blinds were closed on defendant's front window.

T.W. informed the Middle Township Police Department of the October 2 incident and an investigation ensued. When questioned about the episode, defendant denied any wrongful conduct although he conceded that "he may have answered the phone without any clothes on." Defendant did not testify at trial.

### B.

The Appellate Division, *sua sponte*, raised the issue whether "an actor's conduct that is completely encompassed by the fourth-degree crime as defined by *N.J.S.A.* 2C:14–4b(1)(lewdness observed by a child less than 13 years of age) may also be prosecuted as a third-degree crime as defined by *N.J.S.A.* 2C:24–4 (endan-

gering the welfare of children) in the absence of any elements not already encompassed by *N.J.S.A.* 2C:14–4(b)(1)." Answering that question in the affirmative, the Appellate Division majority concluded that the two statutes proscribe independent criminal conduct and require distinct proofs to warrant conviction for each offense. *Hackett, supra,* 323 *N.J.Super.* at 475, 733 *A.2d* 554.

The majority also agreed that defendant's exposure of his nudity to the girls could constitute the "sexual conduct" element necessary to sustain an endangering conviction, citing the decision in *State v. White,* 105 *N.J.Super.* 234, 251 *A.2d* 766 (App.Div.), *certif. denied,* 54 *N.J.* 242, 254 *A.2d* 789 (1969). *Hackett, supra,* 323 *N.J.Super.* at 472, 733 *A.2d* 554. In that case, the defendant had shown photographs of nude men and women in various postures to a child. The majority below reasoned that if showing nude photographs to children could equate with "sexual conduct" under the endangering statute, defendant's nudity could as well. *Ibid.* But, the panel concluded that an act of exposure may constitute the third-degree crime of endangering only if that exposure had "more than a theoretical capacity to have impaired or debauched the child's morals." *Ibid.* That added requirement did not make it "necessary for the State to prove ... that the child was not debauched [prior to the act], or his morals more impaired after the act than they were before. The statute forbids the performance of acts which tend to debauch the child or impair his morals whether they actually did so is immaterial." *Id.* at 477, 733 *A.2d* 554 (quoting *State v. Raymond,* 74 *N.J.Super.* 434, 438, 181 *A.2d* 515 (App.Div.1962), *appeal dismissed,* 39 *N.J.* 241, 188 *A.2d* 305 (1963)). Nevertheless, the majority concluded that there was insufficient evidence to support the State's claim that defendant's sexual conduct would impair or debauch the morals of a child. *Id.* at 478, 733 *A.2d* 554.

Noting the "absence of any expert opinion or any evidence offered by a representative of the Division of Youth and Family Services," the majority determined that the limited evidence presented at trial did not suggest that defendant's mere nudity

"would tend to corrupt, mar, or spoil the morals" of the girls. *Ibid.* The majority held that that failure necessitated a reversal of the conviction. *Ibid.* In so holding, the majority also pointed out that the Model Jury Charge's definition of "sexual conduct" was flawed because it used a reference to nudity that was applicable to *N.J.S.A.* 2C:24–4b (1)(i), the section of the statute prohibiting child pornography. In such a circumstance, the nudity described is the nudity of the child, not, as was the case here, the nudity of the actor.

The dissenting member of the panel below asserted that prior case law established that it is not necessary that defendant's conduct actually be demonstrated to have impaired or debauched the morals of a minor. *Id.* at 485, 733 *A.2d* 554. It was his view that the victims' testimony that defendant, on numerous occasions, stood nude in his home in full view of the children passing by "was sufficient to present a jury question as to whether defendant's conduct tended to impair or debauch the morals of the child." *Ibid.* The dissent disagreed that expert testimony would be necessary to prove that endangering had occurred. *Id.* at 489, 733 *A.2d* 554. Finally, the dissent concluded that although the majority correctly alluded to a flaw in the Model Jury Charge on endangering, that infirmity was not implicated in the present case because the trial court explicitly defined sexual conduct as acts constituting lewdness, the offense charged in count one against defendant. *Ibid.*

## II.

### A.

In *State v. Zeidell*, 154 *N.J.* 417, 713 *A.2d* 401 (1998), the Court was called upon to determine how the Legislature intended to distinguish second-degree sexual assault from fourth-degree lewdness. In Zeidell, the defendant was witnessed masturbating while standing on a boardwalk in clear view of two children and an adult who were on the beach approximately seventy-five feet from the

boardwalk. *Id.* at 420, 713 *A.*2d 401. Defendant was convicted of tender-years-sexual assault, *N.J.S.A.* 2C:14–2b, endangering the welfare of children, *N.J.S.A.* 2C:24–4a, and fourth-degree lewdness, *N.J.S.A.* 2C:14–4b(1). *Id.* at 419, 713 *A.*2d 401. The Court distinguished fourth-degree lewdness from second-degree-tender years sexual assault by noting that lewdness requires that the actor's exposure be performed with the actor's knowledge or reasonable expectation that he is likely to be observed by a child less than thirteen years of age. *Id.* at 430, 713 *A.*2d 401. Moreover, "lewdness is limited to exposing or displaying an actor's intimate parts rather than touching them." *Id.* at 431, 713 *A.*2d 401.

Tender-years-sexual assault, on the other hand, requires there to be a touching of the actor's intimate parts "in view" of an underage child "whom the actor knows to be present." *N.J.S.A.* 2C:14–1d. Thus, the Court continued, "unlike lewdness, sexual assault does not require the underage child to actually observe the touching" although it was noted that the children did testify that they saw the prohibited act so there was no dispute that they were in Zeidell's field of vision. *Ibid.*

Our inquiry here must distinguish third-degree endangering from fourth-degree lewdness.

2C:14–4. Lewdness.

a. A person commits a disorderly persons offense if he does any flagrantly lewd and offensive act which he knows or reasonably expects is likely to be observed by other nonconsenting persons who would be affronted or alarmed.

b. A person commits a crime of the fourth degree if:

(1) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or of any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a child who is less than 13 years of age where the actor is at least four years older than the child.

2C:24–4. Endangering Welfare of Children.

a. Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in R.S. 9:6–1, R.S. 9:6–3 and *P.L.*1974, *c.* 119, § 1 (*C.* 9:6–8.21) is guilty of a crime of the second degree. Any

other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.

■ In the context of this appeal, our analysis of the offenses of lewdness and endangering the welfare of children reveals a common denominator that is an element of both offenses: the nudity of the defendant. Lewdness is a disorderly persons offense whenever the actor commits a lewd or offensive act that he knows or reasonably anticipates is likely to be viewed by victims older than thirteen who would be affronted or alarmed by such conduct. *N.J.S.A.* 2C:14–4a; *Zeidell, supra,* 154 *N.J.* at 430, 713 *A.2d* 401. The lewd or offensive act becomes a fourth-degree offense when the lewdness constitutes the exposing of the actor's genitals for the sexual gratification of the actor or some other person. The fourth-degree offense of lewdness must involve a victim under the age of thirteen, and the actor must be at least four years older than the victim. *Ibid.*; *N.J.S.A.* 2C:14–4b(1).

■ In order to constitute fourth-degree lewdness then, the nudity of the actor must be occasioned by the sexual desire of the actor to be observed by a minor who is less than thirteen. *Hackett, supra,* 323 *N.J.Super.* at 474, 733 *A.2d* 554. The *mens rea* of the actor constitutes an important element of the offense of fourth-degree lewdness. In the crime of endangering the welfare of children, the potential effect on the victim constitutes an additional factor not required for a lewdness prosecution.

■ Endangering the welfare of children is a third-degree offense where an actor "engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child. . . ." *N.J.S.A.* 2C:24–4a. The same nudity that may constitute the fourth-degree offense of lewdness can additionally form the basis for the third-degree offense of endangering the welfare of children if such nudity "would impair or debauch the morals" of a child under the age of sixteen. The actor's nudity may form the basis of a second-degree conviction under the act if, in addition to the requisite elements discussed above, the actor was the parent,

guardian or otherwise stands in *loco parentis*. Thus, the focus in a prosecution for endangering the welfare of children shifts from the mental state of the actor in performing the lewd conduct to the potential effect that such conduct may have on the morals of the child or children who are witness to the conduct.

We agree with the Appellate Division majority that a conviction for fourth-degree lewdness should not automatically sustain a third-degree endangering conviction. To sustain such a conviction, there must be proof that the nudity went beyond mere exposure and "would impair or debauch the morals" of the children subjected to such conduct. We also concur with the majority's conclusion that if a defendant is convicted of both lewdness and third-degree endangering offenses, the trial court should merge the lewdness conviction into the endangering conviction. *Cf. State v. Still*, 257 *N.J.Super.* 255, 259, 608 *A.*2d 404 (App.Div. 1992) (holding that defendant's endangering conviction merged into conviction of sexual assault). We note that the Appellate Division sustained defendant's lewdness conviction. That conviction is not challenged in this appeal. We part ways with the majority, however, by concluding that the evidence adduced at trial was sufficient to have enabled a properly-instructed jury to conclude that the defendant's conduct would debauch or impair the morals of girls aged thirteen and under.

### B.

Our review of this matter necessarily requires a review of the recent history of the lewdness and endangering statutes. In 1992, both statutes were amended by the Legislature as part of an effort to increase penalties for sexual crimes committed against minors. Office of the Governor, *News Release*, "Governor Florio Signs Laws Toughening Penalties and Boosting Child Protection Efforts." (May 13, 1992). Specifically, *L.*1992, *c.* 8, § 1 increased the gradation for lewdness when the victim is less than thirteen years old from a disorderly persons offense to a fourth-degree crime. Similarly, *L.*1992, *c.* 6, § 1 upgraded endangering where

defendant did not have a legal duty for the care of the child from a fourth-degree offense to a third-degree offense.

The majority and dissent arrived at different conclusions regarding the import of the 1992 amendments to the statutes. The dissent contended that because the Legislature indicated a need for stricter punishment of sexual acts involving minors, to conclude that a defendant could be convicted under both the lewdness and endangering statutes is reasonable. *Hackett, supra,* 323 *N.J.Super.* at 488, 733 *A.2d* 554 (Steinberg, J., dissenting). The majority determined that the amendments reflected a "careful and deliberative decision" that the "mere act of exposure, with nothing more, if observed or likely to be observed by a child younger than thirteen years old, should constitute a fourth-degree crime—not a third-degree crime." *Id.* at 476, 733 *A.2d* 554. However, the majority did not dispute that defendant's nudity in this case constituted "sexual conduct" as proscribed by *N.J.S.A.* 2C:24–4a, relying on *White, supra,* which held that displaying explicit photographs of nude adults to children was "sexual conduct." *Id.* at 472, 733 *A.2d* 554.

The reported cases in which a defendant has been prosecuted for endangering the welfare of children typically have involved charges of additional, more serious crimes, notably sexual assault. *See, e.g., State v. D.R.,* 109 *N.J.* 348, 537 *A.2d* 667 (1988) (observing that defendant convicted of aggravated sexual assault, sexual assault and endangering); *State v. Miller,* 108 *N.J.* 112, 527 *A.2d* 1362 (1987)(holding that defendant's conviction of endangering should not merge with conviction of aggravated sexual assault). Therefore, to analyze the type of conduct that has been found to impair or debauch the morals of a child, we must consider decisional law construing the current statute's predecessor, *N.J.S.A.* 2A:96–3:

*N.J.S.A.* 2A:96–3. Debauching or impairing morals of a child under 16.

Any person who forces or induces any child under the age of 16 years to do or to submit to any act which tends to debauch the child or impair its morals is guilty of a misdemeanor.

[*N.J.S.A.* 2A:96–3 (repealed by *L.*1978, c. 95).]

In *State v. Bottigliero*, 174 *N.J.Super.* 101, 103, 415 *A.2d* 396 (Resent. Panel 1980), the court held that the endangering statute was congruent to *N.J.S.A.* 2A:96–3. In that case, defendant pled guilty to impairing the morals of two girls. The defendant had shown one girl pictures of a man and a woman engaged in sexual intercourse, and asked another girl to touch his genitals, although there was no indication that the girl did so. *Id.* at 103, 415 *A.2d* 396. Similarly, in *State v. South*, 136 *N.J.Super.* 402, 346 *A.2d* 437 (App.Div.1975), *certif. denied*, 69 *N.J.* 387, 354 *A.2d* 315 (1976), defendant was convicted of both open lewdness, *N.J.S.A.* 2A:115–1, and impairing the morals of a minor for exposing himself to a young girl outside a mall. *Id.* at 405, 346 *A.2d* 437. The defendant had approached the girl and her two friends, asking them to lead him to the men's room. The defendant then told the girls he did not want to go to the men's room but wanted to go outside. The victim was then led behind a tractor trailer where defendant exposed himself. Defendant's conviction for both open lewdness and impairing were affirmed. *Id.* at 410, 346 *A.2d* 437. And as noted earlier, in *White, supra*, the court in affirming defendant's conviction under *N.J.S.A.* 2A:96–3 for displaying nude photographs held "[t]he mere fact that most cases decided under the statute involve physical contact does not compel such a reading into the legislation of such a condition which the Legislature did not see fit to include." 105 *N.J.Super.* at 237, 251 *A.2d* 766.

Thus, convictions under *N.J.S.A.* 2A:96–3 often were sustained even when defendant's only "act" consisted of simple exposure. Admittedly, *N.J.S.A.* 2A:96–3 and *N.J.S.A.* 2C:24–4a are not mirror images of one another. For example, the former statute speaks of "any act" that would debauch or impair, whereas *N.J.S.A.* 2C:24–4a is limited to "sexual conduct." Moreover, the current statute does not appear to require that the State demonstrate that the defendant "force[d] or induce[d]" the child to submit to the act that tends to debauch the child, as required by the earlier statute. That is a significant change because in *Bottigliero*, *White* and *South* there was clearly some degree of inducement present. The deletion of the "force[d] or induce[d]"

language from the statute's present version suggests that there no longer need be any force or inducement and supports the conclusion that mere nudity repeatedly presented at a window can constitute endangering the welfare of children if the other elements of the endangering crime are met.

*N.J.S.A.* 2C:24–4a also has altered the language requiring the State to show that the act "tends to debauch the child or impair its morals." The current statute prohibits sexual conduct "which would impair or debauch the morals of a child." Case law interpreting the predecessor statute, *N.J.S.A.* 2A:96–3, and the Model Jury Charge instructs that it is not necessary for the State to show that the sexual conduct actually resulted in impairing or debauching the morals of the child. As the court noted in *Raymond, supra,* 74 *N.J.Super.* at 438, 181 *A.*2d 515, "[t]he statute forbids the performance of acts which tend to debauch or impair morals—whether they actually did so is immaterial." In *State v. Raymond, supra,* 74 *N.J.Super.* at 436, 181 *A.*2d 515, the defendant was convicted of both lewdness and impairing the morals of the victim. *Id.* at 437, 181 *A.*2d 515. The defendant had sexual contact with a minor. Defendant attempted to introduce evidence to show that the victim had previously engaged in sexual relations with other adults. The Appellate Division held that "the mere fact that the victim had had previous similar relations with others did not make defendant's act one which did not tend to debauch or impair his morals." *Id.* at 438, 181 *A.*2d 515.

■ As did the majority and dissent below, we do not view the altered statutory language "which would impair or debauch the morals of a child" as heightening the proof required on this element. Proof of actual impairing or debauching of the victims' morals is not required. The legislative language prohibits any sexual conduct that *would* result in the impairing or debauching of an average child in the community. The word "would" signals the futurity of a likely event; it does not require the event's actual occurrence.

## III.

█ The victims' testimony at trial provided a thin but sufficient basis upon which a jury could have arrived at a guilty verdict on the endangering charge. The testimony at trial revealed that defendant stood nude in his house, in open view through a front window on October 2, 1996 and several other occasions in the morning hours at the designated time children were assembling at a school bus stop located directly in front of his home. This was not a case involving a child's stolen glimpse of nudity, but instead there was testimony of repeated instances when the defendant allowed himself to be viewed naked, through an unobstructed window, by girls who were age thirteen and under. That description of defendant's conduct supports an endangering charge. The jury might well have determined that defendant's actions appeared designed to attract the attention of little girls in a flagrant and repetitive way. Furthermore, M.M. testified that defendant waved at her while he stood nude, talking on the phone. M.R.K. stated that she saw defendant "posing." And, the testimony of M.R.K., the thirteen-year-old, revealed that she confronted defendant to inform him that she was "getting sick" of the nudity and that her "friends are too young to see this." This suggests that the girls sensed a sexual element to defendant's conduct.

█ We are satisfied that there was no need for expert testimony to establish that defendant's conduct had the tendency to impair or debauch the morals of the children who observed his nudity. That is a determination that a jury is well-equipped to make. We have previously recognized "[t]hat the uncritical acceptance of expert testimony can becloud the issues." *State v. R.W.*, 104 *N.J.* 14, 30, 514 *A.*2d 1287 (1986). Other states have recognized that juries are quite qualified to determine whether the statutory standard of endangering has been met. *See, e.g., State v. Hummer*, 184 *Ariz.* 603, 911 *P.*2d 609, 613 (Ct.App.1995); *People v. Harris*, 239 *Cal.App.*2d 393, 48 *Cal.Rptr.* 677, 681 (1966); *State v. Sullivan*, 11 *Conn.App.* 80, 525 *A.*2d 1353, 1363 (1987); *People v. Simmons*, 92 *N.Y.*2d 829, 677 *N.Y.S.*2d 58, 699 *N.E.*2d

417, 419 (1998). As the court noted in *Sullivan*, in determining whether a defendant's conduct violated the statute, the jury "drew on its knowledge, common sense and experience as to the kind of conduct which is likely to impair the morals of young children." *Id.* at 1363. In *Simmons, supra*, a day care worker was charged with fifteen counts of endangering the welfare of a child for "repeatedly directing vulgar remarks of a sexual nature" to a twenty-three-month-old child. *Simmons, supra*, 677 *N.Y.S.*2d 58, 699 *N.E.*2d at 418. Persons can be convicted under New York's endangering statute if they act "in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old." *N.Y. Penal Law* § 260.10(1) (McKinney 1998). Similar to the holdings involving our endangering statute, the New York Court of Appeals held that actual harm need not be proven in order to sustain an endangering conviction. *Ibid.* The court also found that "jurors, drawing upon their commonsense understanding of the nature of children, could reasonably conclude that ... the remarks were likely to cause the child harm." *Id.* 677 *N.Y.S.*2d 58, 699 *N.E.*2d at 419.

 The dissent below contended that this record did not require scientific, technical or other specialized knowledge, and that a jury is capable of concluding whether defendant's conduct had the tendency to impair or debauch the morals of a child. We agree. We need not look any further than to our Rules of Evidence to find support for that result. *N.J.R.E.* 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

*Landrigan v. Celotex Corporation*, 127 *N.J.* 404, 413, 605 *A.*2d 1079 (1992), set forth the criteria for the admissibility of expert testimony:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror;
>
> (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and

(3) the witness must have sufficient expertise to offer the intended testimony.

A determination of whether specific conduct has the tendency to impair or debauch the morals of the average child is not "beyond the ken of the average juror." The issue to be decided is not "so esoteric that jurors of common judgment and experience cannot form a valid judgment...." *Butler v. Acme Markets*, 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982). In *Horn v. Village Supermarkets, Inc.*, 260 *N.J.Super.* 165, 175–76, 615 *A.*2d 663 (App.Div.1992), *certif. denied*, 133 *N.J.* 435, 627 *A.*2d 1141 (1993), the court, in a malicious prosecution case, precluded expert testimony concerning the anxiety that the plaintiff was alleged to have felt because the assessment of such alleged anxiety was within the common experience and knowledge of the average juror.

In *State v. Walker*, 216 *N.J.Super.* 39, 45–46, 522 *A.*2d 1021 (App.Div.), *certif. denied*, 108 *N.J.* 179, 528 *A.*2d 10 (1987), the court concluded that the testimony of a psychiatrist or psychologist was not necessary to prove that a sexual assault victim suffered "incapacitating mental anguish" due to the attack. Such a factor, that would elevate the charge to first-degree aggravated assault, was for the jury to determine. The court held that the victim's own testimony, if accepted by the jury, would support a connection between the rape and her subsequent emotional state.

In our view, this jury had the ability to discern whether the conduct that occurred had the capacity to debauch or impair the morals of an average child in the community. The question is not whether the victims of the alleged endangering actually had their morals impaired or debauched, but whether the actor's "sexual conduct" was conduct that likely would impair or debauch the morals of a child in the community. Such a determination is well within the abilities of the average jury, and allows the jury to fulfill its role as arbiter of community standards when applying the laws of our State.

## IV.

As noted above, we agree with the majority's determination that the trial court's jury instruction regarding endangering

was flawed, but for a different reason. The panel correctly noted that the Model Jury Charge, as it existed at the time of defendant's trial, was deficient because it improperly defined "sexual conduct" as including "nudity, if alone or depicted for the purpose of sexual stimulation or gratification of any person who may view it." That language was taken from *N.J.S.A.* 2C:24-4b(1)(i), the section of the statute proscribing child pornography. Clearly, incorporating that instruction could have resulted in confusion where the "sexual conduct" charge alludes to defendant's nudity. The Appellate Division majority erred, however, in that the trial court, in fact, did not instruct the jury with a verbatim recitation of the Model Charge. The court omitted from its charge that portion of the Model Charge that the Appellate Division majority properly concluded was inappropriate.

With regard to the endangering count, the trial court instructed the jury as follows:

Now the second count of the indictment charges endangering the welfare of a child. The defendant is charged in the indictment with—with that offense, and the statute which makes that a crime reads as follows: Any person who engages in sexual conduct which would impair or debauch the morals of a child is guilty of a crime. In order to find the defendant guilty of this crime, the State is required to prove beyond a reasonable doubt the following elements: One, that the victim or victims were children under the age of 16; two, that the defendant knowingly engaged in sexual conduct; three, that such conduct would impair or debauch the morals of a child or children.

Now as to the first element, that the victims were children, the use of the term "child" in the statute means any person under the age of 16 at the time of the offense. Now proof of the first element was shown by the proof of the ages of the alleged victims in this case.

As to the second element, that the defendant knowingly engaged in sexual conduct, sexual conduct is a phrase which includes various prohibited acts. *The term "sexual conduct" is a phrase which includes acts which would include, also, the offense charged in count one [lewdness] and/or the offense charged as al—an alternative to count one [disorderly persons lewdness], which I just—both of which I just defined for you moments ago.* You will recollect that this second element must be shown to have been done knowingly.

The third element, which I will define for you, must also have been done knowingly; and that is, that the sexual conduct was engaged knowing it would impair or debauch the morals of the children. Sexual conduct which would impair or debauch the morals of a child is conduct which tends to corrupt, mar, or spoil the morals of a child under 16 years of age. *The law provides that sexual conduct would impair or debauch the morals of the child.* It is not necessary to show that

the sexual conduct actually resulted in impairing or debauching the morals of a child.

Now as I have instructed you, both the second and third elements of the offense require the defendant acted knowingly. A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that the conduct—his conduct is of that nature or that such circumstances exist or the person is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if the person is aware that it is practically certain that the conduct will cause such a result.

In order to find the defendant guilty, the State must prove each and every element of the offense as I have just defined it for you beyond a reasonable doubt. If you find the defendant has failed to prove any of—or all of the elements of the offense beyond a reasonable doubt, then you must find the defendant not guilty.

[emphasis added.]

The trial court, in omitting the offending sentence, avoided the error cited by the majority of the Appellate Division. The dissent correctly observed that the trial court's charge specifically limited the jury's consideration of "sexual conduct" to the acts of lewdness. But the jury charge as given here was flawed nonetheless because it reasonably could have had the effect of directing a guilty verdict.

 The trial court must give a clear explanation of the applicable law to provide the jury with an adequate understanding of the relevant legal principles. *State v. Burgess*, 154 *N.J.* 181, 712 *A.*2d 631 (1998). A jury must be charged on each element of the crime. *State v. Green*, 318 *N.J.Super.* 361, 376, 724 *A.*2d 254 (App.Div.1999), *aff'd*, 163 *N.J.* 140, 747 *A.*2d 1234 (2000). That portion of the jury's charge that stated that "[t]he law provides that sexual conduct would impair or debauch the morals of the child" effectively obscured the distinction between the second and third elements of the endangering statute. The jury was instructed incorrectly that if it found defendant's actions constituted sexual conduct, then the jury must conclude the defendant necessarily impaired or debauched the morals of children. The separate determination that the jury must make on the third element of the endangering crime was not properly explained. We are certain that the jury was entitled to a more precise instruction than it received from the charge it was given in order for it to

have properly determined beyond a reasonable doubt whether defendant's sexual conduct would debauch or impair the morals of a child as required under the statute. Normally we would consider that defect to constitute plain error requiring a new trial. But, defendant is deceased and a retrial is not possible.

█ We note that the Model Jury Charge for endangering the welfare of a child was revised June 19, 2000. The charge in its current form appears to correct the infirmities inherent in the charge's previous version. The revised charge deletes any reference to nudity and leaves it to the trial court to instruct the jury on the nature of the sexual conduct allegedly committed by the defendant. The revised charge also appears to have addressed the problem in this case by completely omitting the following sentence: "The law provides that the sexual conduct would impair or debauch the morals of a child." We shall entrust to the Committee on Model Jury Charges, Criminal, the question whether any further amendment to the model charge is necessary. In that connection, we note that the revised charge states that "[s]exual conduct [that] would impair or debauch the morals of a child is conduct which *tends to corrupt, mar or spoil the morals of a child under sixteen (16) years of age.*" (emphasis added). That explanatory language could, in our view, be supplemented to more clearly inform the jury of its obligation to consider the proof of sexual conduct offered by the State and to evaluate that proof in the context of objectively reasonable contemporary standards in determining whether that conduct would tend to impair the morals of the victim.

## V.

As modified, the judgment of the Appellate Division is affirmed; because defendant is deceased, the matter is remanded to the trial court for entry of an order dismissing the endangering count of the indictment.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.